[Cite as *Smith v. Smith*, 2022-Ohio-299.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KEVIN SMITH,

        Plaintiff-Appellee/
        Cross-Appellant,

        v.

CSILLA E. SMITH,

        Defendant-Appellant/
        Cross-Appellee.

:

:

:

:

:

:

:

Nos. 110214, 110245,
and 110274

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 3, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-17-366276

---

### *Appearances:*

Stafford Law Co., L.P.A., Joseph G. Stafford, and Nicole A.
Cruz, *for appellee and cross-appellant*.

Rosenthal | Thurman | Lane, L.L.C., and James L. Lane,
*for appellant and cross-appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant/cross-appellee, Csilla Smith ("Csilla"), appeals

from the judgment of the Cuyahoga County Court of Common Pleas, Domestic

Relations Division, adopting the magistrate's decision primarily regarding distribution of marital assets, as modified. Plaintiff-appellee/cross-appellant, Kevin Smith ("Kevin") also appeals the judgment. For the reasons that follow, we affirm.

## Procedural History and Substantive Facts

{¶ 2} The parties were married on June 9, 1984, shortly after they both graduated from The Ohio State University. Four children were born as issue to the marriage, all of whom are emancipated adults, and all of whom obtained their college education with the financial assistance of their parents.

{¶ 3} In 1986, after the parties' first child was born, Csilla obtained a law degree and passed the bar exam in 1987. Csilla initially worked as a law clerk but gave up attempts to be employed full-time as an attorney because of the high cost of childcare. During the underlying proceeding, Csilla was employed full-time as a Quality Assurance Manager with Yes MLS at an annual salary of $56,000, plus benefits.

{¶ 4} Kevin, who holds a college degree in agriculture, initially worked in the insurance industry, teaching agents how to sell health insurance. Kevin held a variety of sales and marketing jobs, but later acquired a minority interest in several business entities. Kevin did not acquire his minority interest with cash contributions, but instead through his labor and knowledge of running the daily operations of these entities. During the underlying proceedings, Kevin's income was approximately $155,000.

{¶ 5} The parties acquired two homes in Northeast Ohio, one located in Broadview Heights and the other in Medina. They also acquired a home in Columbus, Ohio, so that their children could live rent free, while attending The Ohio State University. In addition, the parties acquired a condominium in Florida, where they vacationed once or twice each year. Apart from the real property purchases, the parties did not spend a lot of money during the marriage, choosing instead to focus on paying for their children's college education.

{¶ 6} On November 23, 2015, the parties mutually separated, and Kevin left the marital residence. Following their separation, the parties attempted to amicably divorce through mediation and then through a collaborative process but were unsuccessful.

{¶ 7} On March 22, 2017, Kevin filed his complaint for divorce. On May 3, 2017, Csilla filed her answer and counterclaim, wherein she sought a temporary support order. On August 2, 2017, the magistrate issued a support order that required Kevin to pay Csilla $2,500 per month in temporary spousal support.

{¶ 8} The matter was heard before the court magistrate on March 6-7, 2018, June 12-13, 2018, February 25-26, 2019, May 28-29, 2019, and July 8, 2019, respectively. The magistrate heard testimony from Csilla and Kevin, as well as their respective business valuation experts Lewis Baum ("Baum") and Bernard Agin ("Agin").

{¶ 9} On February 26, 2020, the magistrate issued the decision. The decision addressed the issue of (1) the duration of the marriage, (2) marital value of

the minority interests in corporate entities, (3) marital value of the Columbus, Ohio student housing rental property proceeds of sale, (4) recommendations involving other real and personal property, (5) receivable for loan to the parties' son and receivable from WSKS, (6) Self-Employee Pension ("SEP") in Kevin's name, (7) remaining marital property and payments, (8) property division chart, and (9) Csilla's request for spousal support.

{¶ 10} On March 9, 2020, Csilla filed objections to the magistrate's decision. On June 15, 2020, Csilla filed supplemental objections, numbered I, II, III, IV, V, VI, VII, VIII, IX and X.[1]

---

[1] I. The magistrate erred by making multiple findings of fact which were inaccurate and unsupported by the evidence.

II. The Magistrate erred by determining that the parties' duration of marriage lasted only until November 23, 2015.

III. The Magistrate erred and abused his discretion by failing to award Defendant her reasonable attorney fees and litigation expenses.

IV. The Magistrate erred and abused his discretion when he awarded Defendant only $1,000 per month in Spousal Support.

V. The Magistrate erred and abused his discretion by requiring Defendant's spousal support to terminate upon her remarriage or cohabitation.

VI. The Magistrate erred and abused his discretion by failing to properly value marital property owned by the parties and by giving Plaintiff ten years to equalize the division of marital property with monthly payments made to Defendant and failed to award her statutory interest.

VII. The Magistrate erred and abused his discretion by failing to retroactively modify temporary spousal support pursuant to Civ.R. 75.

VIII. The Magistrate erred and abused his discretion by refusing to include the loans receivable owed to the parties in the marital estate.

IX. The Magistrate erred and abused his discretion by failing to properly value the marital assets in his handwritten property division chart.

X. The Magistrate erred and abused his discretion by failing to award Defendant her separate property and awarding separate property to Plaintiff which was marital in nature.

{¶ 11} On December 14, 2020, the trial court issued a journal entry, which overruled objections II, III, VII, VIII and IX. The trial court sustained objections V and VI, plus sustained, in part, objections I, VI, and X. In addition, the trial court ordered that Kevin pay Csilla $2,066.98 per month, plus statutory interest to equalize the division of property. The trial court further ordered Kevin to pay Csilla $1,500 in spousal support per month for 108 months or until the death of either party. The trial court retained jurisdiction to modify the amount and duration of the spousal support, noting that remarriage or cohabitation of Csilla may be grounds for modification of the spousal support.

{¶ 12} Kevin also raised objections to the magistrate's decision, numbered I and II, which the trial court overruled.[2]

{¶ 13} On January 20, 2021, the trial court issued a judgment entry of divorce. The entry incorporated the unmodified provisions of the magistrate's decision and the trial court's previous judgment entry that ruled on the parties' respective objections to the magistrate's decision.

{¶ 14} On January 7, 2021, Csilla filed a notice of appeal of the trial court's December 14, 2020 judgment entry. On January 22, 2021, Csilla filed a notice of appeal of the trial court's January 20, 2021 judgment entry of divorce. On

---

[2] I. The Magistrate failed to allocate as marital debt due from the proceeds: a loan from Plaintiff's father for part of the down payment; a debt owed the parties' oldest son for a contribution to the purchase; and reimbursement to each of the parties' children for management and maintenance of the property.

II. The remaining proceeds from the sale of the Columbus property should be divided equally.

February 5, 2021, Kevin filed a cross-appeal of the trial court's judgment entry of divorce. Subsequently, we sua sponte consolidated the respective appeals for briefing, hearing, and disposition.

{¶ 15} In the now consolidated appeal, Csilla assigns the following errors for review:

### Assignment of Error No. 1

The trial court erred and abused its discretion when it determined that the de facto termination date of the parties' marriage was November 23, 2015.

### Assignment of Error No. 2

The trial court erred and abused its discretion when it awarded appellant only $1,500 per month in spousal support for a definite period of 108 months.

### Assignment of Error No. 3

The trial court erred and abused its discretion by failing to award appellant her reasonable attorney fees and litigation expenses.

### Assignment of Error No. 4

The trial court erred and abused its discretion by failing to properly value marital property owned by the parties and by giving appellee ten full years to equalize the division of marital property with monthly payments made to appellant.

### Assignment of Error No. 5

The trial court erred and abused its discretion by failing to retroactively modify temporary spousal support pursuant to Civ.R. 75.

### Assignment of Error No. 6

The trial court erred and abused its discretion by refusing to include the loans receivable to the parties in the marital estate.

## Assignment of Error No. 7

The trial court erred and abused its discretion by failing to properly value the marital assets in the magistrate's handwritten property division chart.

## Assignment of Error No. 8

The trial court erred and abused its discretion by failing to award appellant her separate property and awarding separate property to appellee which was marital in nature.

{¶ 16} In his cross-appeal, Kevin assigns the following error for our review:

## Cross-Assignment of Error

The trial court erred as a matter of law and abused its discretion by failing to allocate marital debts due and owing to the parties' adult children.

## Law and Analysis

{¶ 17} For ease of discussion, we will address the assignments of error out of sequence or simultaneously, where appropriate.

{¶ 18} Preliminarily, Civ.R. 53(D)(4)(d) provides in relevant part that "the [trial] court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." This "independent review" requires the court to '"conduct a de novo review of the facts and an independent analysis of the issues to reach its own conclusions about the issues in the case."' *Lichtenstein v. Lichtenstein*, 8th Dist. Cuyahoga No. 108854, 2020-Ohio-5080, ¶13, citing *In re I.R.Q.*, 8th Dist.

Cuyahoga No. 105924, 2018-Ohio-292, ¶ 23, quoting *Radford v. Radford*, 8th Dist. Cuyahoga Nos. 96267 and 96445, 2011-Ohio-6263, ¶ 13.

{¶ 19} "The trial court must decide 'whether the [magistrate] has properly determined the factual issues and appropriately applied the law, and where the [magistrate] has failed to do so, the trial court must substitute its judgment for that of the [magistrate].'" *Id.*, citing *Gobel v. Rivers*, 8th Dist. Cuyahoga No. 94148, 2010-Ohio-4493, ¶ 16, quoting *Inman v. Inman*, 101 Ohio App.3d 115, 118, 655 N.E.2d 199 (2d Dist.1995). It is generally presumed that the trial court properly conducted an independent review of the magistrate's decision unless the party asserting the error affirmatively shows otherwise. *Id.*, citing *Hartt v. Munobe*, 67 Ohio St.3d 3, 615 N.E.2d 617 (1993) ("An appellate court reviewing a lower court's judgment indulges in a presumption of regularity of the proceedings below.").

## A. Standard of Review

{¶ 20} We review a trial court's determination in domestic relations cases for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

> Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, * * * it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment.

*Id.*, citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981).

{¶ 21} An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or

unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). And where there is some competent, credible evidence in the record to support the trial court's decision, there is no abuse of discretion. *Trolli v. Trolli*, 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487, ¶ 29, citing *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 24.

## B. De Facto Termination Date of Marriage

{¶ 22} In the first assignment of error, Csilla argues the trial court erred and abused its discretion when it determined that the de facto termination date of the marriage was November 23, 2015.

{¶ 23} Normally, the date of the final hearing in a divorce proceeding is presumed to be the termination date of the marriage, unless the court determines that the use of that date would be inequitable in determining marital property. *Kobal v. Kobal*, 8th Dist. Cuyahoga No. 105921, 2018-Ohio-1755, ¶ 19; R.C. 3105.171(A)(2). If the court determines that a de facto termination of the marriage occurred earlier in time, and that using the date of the final hearing as the termination date would be inequitable, the court may, in its discretion, select a date it considers equitable. *Saks v. Riga*, 8th Dist. Cuyahoga No. 101091, 2014-Ohio-4930, at ¶ 8, citing *Berish v. Berish*, 69 Ohio St.2d 318, 321, 432 N.E.2d 183 (1982).

{¶ 24} Generally, a trial court uses a de facto date for termination of marriage "only in cases where the parties have separated; have made no attempts to reconcile; and have continually maintained separate residences, separate business

activities, and separate bank accounts." *Id.*, citing *Gullia v. Gullia*, 93 Ohio App.3d 653, 666, 639 N.E.2d 822 (8th Dist.1994).

**{¶ 25}** This court "has cautioned that a de facto date should not be used unless the 'evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances.'" *Brown v. Brown*, 2014-Ohio-2402, 14 N.E.3d 404, ¶ 9 (8th Dist.), quoting *O'Brien v. O'Brien*, 8th Dist. Cuyahoga No. 89615, 2008-Ohio-1098, at ¶ 41. The trial court has broad discretion in choosing the appropriate marriage termination date, and this decision should not be disturbed on appeal absent an abuse of that discretion. *Berish* at 321.

**{¶ 26}** In the instant matter, after independently reviewing the magistrate's reasoning, the cases cited by the parties, and the transcript, the trial court found, as the magistrate had, that the de facto termination date of the marriage was November 23, 2015. Among the factors influencing the decision are as follows:

> The evidence was clear that * * * the parties finally separated when Plaintiff moved out of the marital residence on November 23, 2015 and the Plaintiff began voluntarily paying at least some of Defendant's monthly expenses. While the parties did try to resolve their dispute using the collaborative process before this case was filed; they had separate bank accounts, lived separately, and were not intimately involved in any manner before the filing of the complaint in this case.

Magistrate's decision pg. 7.

**{¶ 27}** The record also established that the parties began filing separate tax returns in 2015, the year Kevin moved out of the marital residence, and continued this practice in the ensuing years. Notwithstanding, Csilla argues there was continued financial entanglement following the date Kevin moved out of the marital

residence. However, this is not borne out by the record and is even contradicted by the record. At trial, Csilla acknowledged that the only remaining joint bank accounts were closed or had minimal balances after the parties separated. Apart from the cost of medical insurance, Csilla testified that she could not think of any other expense that Kevin was paying on her behalf.

{¶ 28} It is well settled that when testimony is in dispute, we defer to the trier of fact's credibility determination. *Calanni v. Kolodny*, 8th Dist. Cuyahoga Nos. 105269 and 105271, 2018-Ohio-1289, ¶ 11, citing *Fanous v. Ochs*, 8th Dist. Cuyahoga No. 98649, 2013-Ohio-1034, ¶ 18. The trier of fact "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co.,* 10 Ohio St.3d at 80, 461 N.E.2d 1273. Consequently, the reviewing court is "guided by a presumption that the findings of the trier of fact were indeed correct." *Id.*

{¶ 29} Moreover, the record indicates that during the five-plus years since the parties' separation, they ceased to vacation together, did not socialize together or attend business events together. Noteworthy, the parties made no attempts to reconcile, but instead, bilaterally attempted to terminate the marriage, first through mediation, and then through a collaborative divorce process, both of which were unsuccessful. These actions underscore that the parties lived separate lives after their separation.

**{¶ 30}** Based on the above considerations, we conclude November 23, 2015, represents the final pivotal date in the status of the parties' marital relationship. As of that date, the parties were no longer contributing to each other for their mutual benefit. Based on this record, it would have been inequitable to choose the date of the final hearing as the termination date of the parties' marriage. As such, we find the trial court did not err or abuse its discretion when it used November 23, 2015, as the de facto termination date of the parties' marriage.

**{¶ 31}** Accordingly, we overrule Csilla's first assignment of error.

### C. Spousal Support

**{¶ 32}** We will address assignments of error two and five together because they both challenge, in some respect, the trial court's decision regarding spousal support. Collectively, therein, Csilla argues the trial court erred and abused its discretion when it ordered only $1,500 per month in spousal support for period of 108 months and by failing to retroactively modify temporary spousal support.

**{¶ 33}** As a prefatory note, the trial court has broad discretion in determining whether an award of spousal support is proper based on the facts and circumstances of each case. *Wojanowski v. Wojanowski*, 8th Dist. Cuyahoga No. 99751, 2014-Ohio-697, ¶ 43, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). Therefore, we will not disturb a spousal support award absent an abuse of discretion. *Id.*

**{¶ 34}** When determining whether spousal support is appropriate and reasonable, the trial court must consider the factors set forth in R.C. 3105.18(C)(1).

*Kaletta v. Kaletta*, 8th Dist. Cuyahoga No. 98821, 2013-Ohio-1667, ¶ 22.  These

factors include, but are not limited to

> (1) the relative earning abilities of the parties; (2) the ages and physical, mental, and emotional conditions of the parties; (3) the retirement benefits of the parties; (4) the duration of the marriage; (5) the standard of living of the parties established during the marriage; (6) the relative education of the parties; (7) the relative assets and debts of the parties, including but not limited to any court-ordered payments by the parties; (8) the time and expense necessary of the spouse seeking support to acquire education, training, or job experience; (9) the tax consequences for each party of an award of spousal support; and (10) any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

{¶ 35} The goal of spousal support is to reach an equitable result.  *Hloska v.*

*Hloska*, 8th Dist. Cuyahoga No. 101690, 2015-Ohio-2153, ¶ 10, citing *Kaechele v.*

*Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988).  And while there is no set

mathematical formula to reach this goal, the Ohio Supreme Court requires the trial

court to consider all 14 factors of R.C. 3105.18(C) and "not base its determination

upon any one of those factors taken in isolation." *Id.* at ¶ 11.

{¶ 36} In the instant matter, the trial court stated that it reviewed the factors

set forth in R.C. 3105.18(C)(1) and, except for the factor of income of the parties,

agreed with the magistrate's analysis.  Specifically, the trial court stated, "As to R.C.

3105.18(C)(1)(a), the Court finds that, after including 'phantom income',[3] [Kevin's]

income is $768,000 per year and [Csilla's] income is $57,000 per year."

---

[3] The term "phantom income" is used colloquially when a taxpayer receives taxable income but does not presently receive cash or other tangible economic benefits.

{¶ 37} The trial court then ordered Kevin to pay spousal support in the amount of $1,500 per month for a period of 108 months, an amount and duration Csilla deems insufficient. Specifically, Csilla contends the award of spousal support should have been $20,000 per month for an indefinite period. We are not persuaded by Csilla's contention.

{¶ 38} Our review of the magistrate's decision reflects a thoughtful and lengthy analysis, which encompassed each of the enumerated statutory factors. Directly pertinent, in considering the income of the parties, the magistrate found that both parties testified credibly concerning their income. Regarding Kevin, whose income had historically been derived from his minority shareholder status in several closely held businesses, the magistrate found that Kevin's tax return showed income that he did not receive as part of a pass-through process that had been largely driven by Walter Senney ("Senney"), the majority shareholder of these businesses. Consistent with this finding, the magistrate found that Kevin and Csilla never lived a lifestyle that suggested the income shown on the tax return was real.

{¶ 39} The magistrate specifically found that

[t]he parties experienced a moderate standard of living during the marriage. Both parties testified credibly that most of their income was spent on their children's education, and most of their savings was in the form of equity in the marital residence and in the IRA divided above. This factor weighs slightly against [Csilla's] request for spousal support. [Kevin's] testimony was credible in that he stated the parties' plan for the future was for the business entities to become more valuable over time as their cross collateralized loans were paid down, so that they could either be sold at substantial profit, or so that the shareholders could take a larger annual distribution.

{¶ 40} Nothing in the magistrate's well-reasoned analysis remotely suggests that Kevin would be able to comply with an order to pay $20,000 per month in spousal support. Reliable evidence established that the parties' income throughout the marriage never rose to the level that would have supported the order Csilla contemplates. In addition, the record indicates that the trial court awarded Csilla the fair market value or all the equity, totaling $325,000, in the marital residence, where Csilla had continued to reside during the five-year span while the divorce was pending.

{¶ 41} Further, to be discussed in further detail in the fourth assignment of error, in reconciling the business evaluation of Kevin's minority interest, the trial court awarded Csilla the sum of $248,038.50 as a property division, payable in equal monthly installments of $2,066.98. Under the circumstances, we find no abuse of discretion in the amount of spousal support the trial court ordered.

{¶ 42} With respect to Csilla's argument that the 108-month duration of spousal support is too short and, instead should have been indefinite, appears to rest solely on the length of the marriage. While the duration of the marriage was a factor that could weigh in favor of a longer period of spousal support, this cannot be viewed in a vacuum. Factors that must also be considered as to whether Csilla would have resources to be self-supporting are her being awarded the fair market value of the former marital residence ($325,000), the entire value of her Huntington Bank Account, one half of Kevin's SEP retirement account ($176,000), and the entire proceeds from the sale of the Columbus, Ohio house ($116,000), where their

children lived rent free, while attending college. Thus, the court reasonably concluded that the length of spousal support was equitable and appropriate under the circumstances.

{¶ 43} Here, the record reflects that the trial court considered the statutory factors outlined in R.C. 3105.18(C)(1)(a)-(n). The judgment entry also contained sufficient details for this court to determine that the spousal support award was fair and equitable. Moreover, as previously noted, the trial court retained jurisdiction to modify the amount and duration of the spousal support. As such, the award is upheld. *See Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 44, citing *Daniels v. Daniels*, 10th Dist. Franklin No. 07AP-709, 2008 Ohio App. LEXIS 772 (Mar. 4, 2008).

{¶ 44} We now address Csilla's contention that the trial court erred and abused its discretion in failing to retroactively modify the temporary spousal support order.

{¶ 45} Civ.R. 75(N) governs the award of temporary spousal support "[w]hen requested in the complaint, answer, counterclaim, or by motion served with the pleading." Simultaneously with the request for indefinite spousal support in the amount of $20,000 per month, Csilla requested an award of temporary support in the same amount retroactive to May 3, 2017.

{¶ 46} In earlier addressing Csilla's contention that she should have been awarded $20,000 per month for an indefinite period, we found no justification or support in the record for that level of a support order. Further, the record indicates

that during their respective trial testimonies, the parties presented detailed budgets. Csilla's budget indicated that her living expenses were mostly covered by Kevin's compliance with the $2,500 per month of temporary spousal support.

**{¶ 47}** Finally, speaking to this request, the trial court stated:

> The Magistrate specifically found that [Csilla] testified that she was able to meet her monthly expenses during the pendency of the litigation from the ordered temporary support of $2,500 per month. Moreover, she has income from employment of $56,000 plus benefits. The record supports these findings.

**{¶ 48}** Again, in light of the foregoing, we cannot find any error or abuse of discretion in the trial court's decision not to retroactively award temporary spousal support to Csilla. The trial court's judgment contains sufficient detail demonstrating that the decision is fair, equitable, and in accordance with the law.

**{¶ 49}** Accordingly, we overrule Csilla's second and fifth assignments of error.

### D. Property Valuation

**{¶ 50}** In the fourth assignment of error, Csilla argues the trial court erred and abused its discretion by improperly valuing the marital property and by giving Kevin ten years to equalize the division of property.

**{¶ 51}** To begin, R.C. 3105.171(C)(1) mandates an equal division of marital property, or "if an equal division is inequitable, the court must divide the marital property equitably." *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 37, citing *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434. Thus, in order to determine what is equitable, the trial court must consider the

factors outlined in R.C. 3105.171(F). *Id.* Such factors include, among others, the duration of the marriage, the assets and liabilities of the spouses, tax consequences of the property division, and any retirement benefits of the spouses. R.C. 3105.171(F)(1)-(10). Moreover, the trial court must take into account the parties' marital debt when dividing marital property. *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, ¶ 14 (8th Dist.).

{¶ 52} With the above principles in mind, we first address Csilla's contention that the trial court erred when it determined that Kevin's business interests had a value of $1,005,000.

{¶ 53} Valuing property involves factual inquiries, requiring an appellate court to apply a manifest weight of evidence standard of review. *Bradley v. Bradley*, 8th Dist. Cuyahoga No. 109792, 2021-Ohio-2514, ¶ 105, citing *Wright v. Wright*, 4th Dist. Hocking No. 94CA02, 1994 Ohio App. LEXIS 5207 (Nov. 10, 1994). Therefore, a trial court's valuation of an asset will not be overturned if it is supported by some competent, credible evidence. *Id.*, citing *Seasons Coal Co.*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984), and *Haynes v. Haynes*, 8th Dist. Cuyahoga No. 92224, 2009-Ohio-5360.

{¶ 54} In the instant matter, both parties hired an expert to determine the fair market value of the minority interests Kevin held in various business entities. Kevin's business valuation expert, Agin valued the assets in the respective companies at $1,005,000. Agin testified that closely held corporations, such as those in question, were difficult to sell, especially in light of Kevin's fractional

interest in the companies. Agin testified that he utilized a discounted cash flow, emphasizing the uneven income stream and expenses that always trended upward. In addition, Agin testified that the companies carried a high amount of debt, approximately $13,000,000, which would negatively impact Kevin's ability to sell his minority interests.

{¶ 55} Csilla's business valuation expert, Baum, valued the assets at $2,370,000 utilizing a market-based method, which considered recent sales of companies in similar industries. Baum opined that Agin's opinion was too pessimistic, noting that the capital accounts of some of the entities were increasing annually, that debts were being paid in a timely manner, and that the entities were generally profitable. Csilla contends Baum's valuation was more credible and should have been adopted.

{¶ 56} However, in determining a business's value, the trial court has discretion to weigh the testimony offered by the parties' valuation experts. *Hoag v. Stewart*, 8th Dist. Cuyahoga No. 100951, 2014-Ohio-4090, ¶ 11, citing *Brown*, 2014-Ohio-2402, 14 N.E.3d 404, at ¶ 32, citing *Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, at ¶ 62, and *Bryan v. Bryan*, 8th Dist. Cuyahoga No. 97817, 2012-Ohio-3691. The trial court is not required to adopt any particular methodology in determining a business's value. *Id.*

{¶ 57} In assessing the credibility of parties' experts, the magistrate found that

[Csilla's] expert understated the effects of the complicated corporate agreements that define [Kevin's] minority interest, the cross collateralization of the various entities, and the personal liability undertaken by the partners and their spouses, when rendering an opinion with regard to the marital value of these corporate entities.

\* \* \*

The court finds [Kevin's] and [Agin's] testimony regarding the complexities involved if the companies were to be wound down or put up for sale (which would decrease the value) to be most credible. Furthermore, the lifestyle of the parties during the marriage, to which both testified credibly, never suggested that the companies were as profitable as [Csilla] now contends.

{¶ 58} The above snapshot of the magistrate's reasoning regarding the propriety of accepting Agin's evaluation over Baum's is supported by competent credible evidence. At trial, Kevin provided an example of the tenuous nature of the business relationship based on the complicated corporate agreements attendant to his minority ownership interest. Kevin stated:

We bought Smart Sonic of Ohio for a million, four. There were three partners: Myself, Wally and Kevin Kleinsmith. Kevin Kleinsmith was a friend of Walter Senney, and he wanted to go into business with Mr. Senney. So the three of us bought the business with Kevin Kleinsmith being — he was going to run the business, do all the sales, and that's how it started. He decided he didn't like doing this, so he wanted to get out of the business. So, Mr. Senney told me one day that, "I'm buying him out." It wasn't, "Kevin, would you like to buy some too?" It was, "I am buying him out."

{¶ 59} The above testimony provides a glimpse, which comports with the magistrate's finding that the complex nature, the cross-collateralization, and high debt would negatively impact Kevin's ability to wind down or sell his minority interest in respective entities.

{¶ 60} A trial court is free to ascertain and apply a statutorily compliant valuation protocol to achieve an equitable result. *Katz v. Katz*, 8th Dist. Cuyahoga No. 103715, 2017-Ohio-4290, ¶ 55, citing *Chattree v. Chattree,* 2014-Ohio-489, 8 N.E.3d 390, ¶ 43 (8th Dist.), citing *James v. James*, 101 Ohio App.3d 668, 681, 656 N.E.2d 399 (2d Dist.1995). To underscore, "when determining the value of marital assets, a trial court is not confined to the use of a particular valuation method but can make its own determination as to valuation based on the evidence presented." *Id.*

{¶ 61} Based on the foregoing, Csilla's contention that the trial court erred in pegging the value of the business entities at $1,005,000 is not well-taken.

{¶ 62} We now address Csilla's contention that the trial court erred when it gave Kevin ten years to pay out Csilla's share of the business entities. Csilla relies on this court's decision in *Woyt v. Woyt*, 8th Dist. Cuyahoga Nos. 107321 and 107322, 2019-Ohio-3758, to support her contention that her marital share should be paid out immediately. Csilla's reliance misses the mark, because Woyt is distinguishable from the facts of the instant matter.

{¶ 63} In *Woyt*, the trial court determined that husband's law firm capital account had a value of $132,817.53 and wife was entitled $66,409. The trial court ordered husband to pay wife "50 percent of any distribution if, and when, he received it until the total of $66,409 was paid in full." *Id.* at ¶ 32. There, the terms of the distribution were determined entirely by husband's law firm in which he

maintained a partnership interest. As such, we found it inequitable to subject wife to an indefinite term of distribution. *Id.* at ¶ 33-34.

{¶ 64} Here, unlike *Woyt*, the trial court properly noted that Kevin's minority interest in the closely held corporation is illiquid and specifically found that "[f]orcing [Kevin] to sell his interest — or one-half his interest — would likely result in a lower price, less proceeds to divide." Unlike *Woyt*, the trial court then affixed a period certain for Csilla to receive her share of the business. In addition, in consideration that Csilla would not be receiving an immediate share, the trial court found that interest was due on these payments.

{¶ 65} Again, R.C. 3105.171 requires a trial court to equitably distribute marital property. *Rodgers v. Rodgers*, 8th Dist. Cuyahoga No. 105095, 2017-Ohio-7886, ¶ 13. Under the circumstances of this case, the trial court's decision regarding both of Csilla's contentions was equitable. As such, we find no abuse of discretion.

{¶ 66} Accordingly, we overrule Csilla's fourth assignment of error.

{¶ 67} In the seventh assignment of error, Csilla argues that the trial court erred and abused its discretion by failing to properly value the marital assets in the magistrate's handwritten chart. Csilla broadly asserts that "the trial court mixed and matched valuation dates to make up for a lack of evidence of asset values on the de facto termination date of the marriage, and by so doing, deprived [her] of hundreds of thousands of dollars in marital funds that were improperly awarded to [Kevin]."

{¶ 68} It is worth remembering that a domestic relations court enjoys broad discretion in fashioning a division of marital property, and its decision will not be reversed absent an abuse of that discretion. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 95, 518 N.E.2d 1197 (1988). Further, a reviewing court may not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989).

{¶ 69} In the instant matter, the referenced handwritten property division chart indicates a compendium of the items the trial court found to be marital assets and awarded to each party. The chart is comprised of values provided by the parties through their respective testimonies or that of their business valuation experts.

{¶ 70} As reflected therein, and as previously discussed, the trial court awarded to Kevin his minority business interest in the various companies totaling $1,005,000, plus the value of a health savings account of $21,000 for a total of $1,026,000. On the other hand, the chart reflected that the trial court awarded Csilla the fair market value or the entire equity in the marital residence of $325,000; Csilla's Huntington Bank Account of $34,000; 401(K) of $2,200; Progressive stock of $2,258; Escrow Funds of $116,465; Fidelity Account of $8,000; Citibank Account of $18,000, and Kevin's Huntington Bank Account of $24,000 for a total of $529,923.

{¶ 71} The chart revealed that the sum attributed to Csilla of $529,923 was subtracted from the sum of $1,026,000 attributed to Kevin, resulting in the sum of

$496,077 that needed to be divided equally to arrive at an equitable division of the parties' marital estate, or $248,038.50. When recharacterized, Csilla and Kevin each received the sum of $777,961 as an equitable distribution of the marital estate.

{¶ 72} Here, despite Csilla's broad assertion, there exists sufficient information in the referenced chart and elsewhere in the record for us to determine, under the totality of the circumstances that the property division herein was fair, equitable, and in accordance with the law. As such, Csilla's assertion is not well-taken.

{¶ 73} Accordingly, we overrule Csilla's seventh assignment of error.

### E. Loan Receivables / Repayments

{¶ 74} In the sixth assignment of error, Csilla argues that the trial court erred and abused its discretion by refusing to include loan receivables in the marital estate.

{¶ 75} When distributing property in a divorce proceeding, the trial court must first determine what constitutes marital property and what constitutes separate property. *Herrera v. Phil Wha Chung*, 8th Dist. Cuyahoga No. 109793, 2021-Ohio-1728, ¶ 37, citing *Comella v. Comella*, 8th Dist. Cuyahoga No. 90969, 2008-Ohio-6673, ¶ 38, citing R.C. 3105.171(B). A trial court's characterization of property as marital or separate property is a mixed question of law and fact that will not be reversed unless it is against the manifest weight of the evidence. *Saks*, 8th Dist. Cuyahoga No. 101091, 2014-Ohio-4930, at ¶ 35, citing *Williams v. Williams*, 8th Dist. Cuyahoga No. 95346, 2011-Ohio-939, ¶ 8. As such, this court will not

disturb the trial court's distribution of separate property absent an abuse of discretion. *Id.*

{¶ 76} At issue within this assignment of error are two loans Kevin made. The first, to the parties' son, Nicholas, in December 2017, in the amount of $200,000. The second, to WSKS Property Management ("WSKS"), in August 2016, in the amount of $238,000. Csilla contends that the receivables or repayments flowing from both loans are marital property and should be divided equally.

{¶ 77} Pertinent to our resolution here is R.C. 3105.171(A)(3)(a)(i), which provides that marital property includes "[a]ll real and personal property that currently is owned by either or both of the spouses * * * that was acquired by either or both of the spouses during the marriage." *Id.* Of particular importance is the term "during the marriage," the parameters of which we addressed at length in the first assignment of error. There, we concluded that the trial court did not err or abuse its discretion when it found November 23, 2015, to be the de facto termination date of the parties' marriage.

{¶ 78} In the instant matter, the trial court found that the loans were nine months and 25 months respectively, after the de facto termination date of the marriage. In so finding, the trial court specifically stated that

> the evidence shows that during the interval between the de facto [termination] and the loans, the parties maintained separate financial lives (except for court-ordered temporary spousal support.) The court finds the loans were made from [Kevin's] separate, post-marital assets.

{¶ 79} Again, in resolving the first assignment of error, we discussed in detail how separately, financially, and socially the parties lived after the focal date of November 23, 2015.

{¶ 80} Based on the foregoing, and in particular our conclusion regarding the de facto termination date of the marriage, we find that the trial court did not err or abuse its discretion in finding the loans to be nonmarital property. Because the determination was supported by competent credible evidence that Kevin made both loans after the de facto termination of the marriage, with post-marital assets, the receivables or repayments flowing therefrom were properly classified as separate property. As such, Csilla was not entitled to share in these nonmarital assets.

{¶ 81} Accordingly, we overrule Csilla's sixth assignment of error.

## F. Separate Property

{¶ 82} In the eighth assignment of error, Csilla argues the trial court erred and abused its discretion when it failed to award her a separate property interest in the Royalton Road residence and by finding the Medina residence Kevin's separate property.

{¶ 83} In determining whether assets are marital or separate, the trial court is governed by R.C. 3105.171. Marital property generally includes all property acquired by either party during the marriage as well as the appreciation of separate property due to the labor, monetary, or in-kind contributions of either party during the marriage. R.C. 3105.171(A)(3)(a)(i) and (iii). Generally, property acquired during a marriage is presumed to be marital property, unless it can be shown to be

separate. *Victor v. Kaplan*, 8th Dist. Cuyahoga No. 108252, 2020-Ohio-3116, ¶ 34, citing *Johnson v. Mills*, 8th Dist. Cuyahoga No. 102241, 2015-Ohio-4273, ¶ 18.

{¶ 84} Within this assignment of error, Csilla contends that she has a separate property interest in the former marital home on Royalton Road, Broadview Heights, in the amount of $35,000.

{¶ 85} In the instant matter, the evidence established that the parties purchased the former marital home in 1994. At trial, Csilla testified her mother died in December 2011, and she inherited the sum of $54,000, of which $35,000 was deposited into a joint account, with the understanding that Kevin would utilize it to pay off the mortgage. In support of this claim, Csilla introduced Exhibit Y, copies of three distributive checks from her mother's estate. Csilla testified that she recalled receiving notice that the mortgage had been canceled shortly after receiving the inheritance.

{¶ 86} In declining to award Csilla a separate property interest in the former marital residence, the trial court found that

> [Csilla] did not produce any evidence that the mortgage on the Royalton Road home has been paid off; no cancelled check from the joint account to the mortgage holder; no satisfaction of the mortgage; etc. [Csilla] has shown that she received an inheritance from her mother. [Csilla] has not shown that she contributed that inheritance to the value of the marital home.

{¶ 87} Indeed, the party seeking to have certain property classified as "separate property" has the burden of proof, by a preponderance of the evidence, in tracing the separate property. *Kaplan*, 8th Dist. Cuyahoga No. 108252, 2020-Ohio-

3116, ¶ 34, citing *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831 at ¶ 49, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994).

{¶ 88} Critically, separate property commingled with marital property remains as separate property unless it becomes no longer traceable. R.C. 3105.171(A)(6)(b). Thus, traceability becomes the focus in determining whether separate property has lost its character after being commingled with marital property. *Lichtenstein*, 8th Dist. Cuyahoga No. 108854, 2020-Ohio-5080, ¶ 21, citing *Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994).

{¶ 89} Further, it is important to remember that a party seeking to establish the separate property has the burden of proof only by a preponderance of the evidence. "Preponderance of the evidence means the greater weight of evidence that is necessary to destroy the equilibrium." *Lichtenstein*, 8th Dist. Cuyahoga No. 108854, 2020-Ohio-5080, ¶ 28, citing *Reed v. Reed*, 3d Dist. Allen No. 1-09-63, 2010-Ohio-4550, ¶ 10, quoting *State v. Stumpf*, 32 Ohio St.3d 95, 102, 512 N.E.2d 598 (1987).

{¶ 90} Here, not only has Csilla failed to trace the separate property, but also failed to put forth evidence that would destroy the equilibrium. As such, Csilla's contention is not well-taken.

{¶ 91} Within this assignment of error, Csilla also contends that the trial court should not have awarded the Medina property separately to Kevin.

{¶ 92} It is necessary to note that, although Csilla asserts that the Medina home was awarded to Kevin as his separate property, that is not borne out by the record. To the contrary, the record indicates that the trial court found that the Medina home was presumptively marital property because it was purchased in April 2015, seven months prior to the de facto termination date of the parties' marriage.

{¶ 93} In the matter, despite the recharacterized claim that the trial court should not have awarded Kevin a separate property interest in the Medina home, Kevin produced the requisite evidence to establish his separate property interest. To that end, Kevin testified at trial that he used an inheritance from his father to make the down payment on the subject property. In support of this claim, Kevin introduced a gift letter substantiating this, along with a check reflecting payment from his father's trust to the title company in the amount of $113,000.

{¶ 94} Here, unlike Csilla's claim of a separate property interest of $35,000 in the former marital residence on Royalton Road, Kevin was able to trace his separate property interest in the new residence, although presumptively found to be marital in nature. Thus, Kevin satisfied his burden of proof by a preponderance of the evidence. As such, we find no abuse of discretion in the trial court's decision.

{¶ 95} Accordingly, we overrule Csilla's eighth assignment of error.

### G. Attorney Fees

{¶ 96} In the third assignment, Csilla argues the trial court erred and abused its discretion by ordering each party to pay their own attorney fees and litigation expenses.

{¶ 97} We also review a postdecree award of attorney fees for an abuse of discretion. *Wojanowski v. Wojanowski*, 8th Dist. Cuyahoga No. 103695, 2017-Ohio-11, ¶ 15, citing *Cutter v. Cutter*, 8th Dist. Cuyahoga No. 96375, 2012-Ohio-358, ¶ 26. Postdecree motions for attorney fees are governed by R.C. 3105.73, which provides in relevant part as follows:

> (B) In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

*Id.*

{¶ 98} This statute gives a trial court broad discretion to award attorney fees and litigation expenses if it finds the award equitable. *Wojanowski* at ¶ 15; *Cutter* at ¶ 26; *Phelps v. Saffian*, 8th Dist. Cuyahoga No. 106475, 2018-Ohio-4329, ¶ 45. The decision will not be overturned on appeal absent an abuse of that discretion. *O'Brien v. O'Brien*, 8th Dist. Cuyahoga No. 89615, 2008-Ohio-1098, ¶ 71; *Layne v. Layne*, 83 Ohio App.3d 559, 568, 615 N.E.2d 332 (2d Dist.1992).

{¶ 99} In the instant matter, the trial court aptly noted that attorney fees are primarily the responsibility of the party who retains the attorney. *See Farley v. Farley*, 97 Ohio App.3d 351, 358, 646 N.E.2d 875, ¶ 58 (8th Dist.1994). The trial court also noted:

> The record shows that [Csilla] has earned income of $57,000; has received temporary spousal support during the pendency of this action;

will receive post-decree spousal support; and, will receive assets of significant value. The Court finds that it is equitable that each party bear their own attorney fees and litigation.

{¶ 100} Under the facts and circumstances here, we decline to say that the trial court abused its discretion in adopting the magistrate's decision and denying Csilla's request for attorney fees and litigation expenses. As previously discussed, while addressing the issue of spousal support, Csilla received assets of significant value. The trial court's decision was not unreasonable, arbitrary or unconscionable.

{¶ 101} Accordingly, we overruled Csilla's third assignment of error.

## H. Marital Debts

{¶ 102} In Kevin's sole cross-assignment of error, he argues the trial court erred and abused its discretion by failing to allocate as marital debt funds owed to one or more of their adult children.

{¶ 103} A trial court must also take into account the parties' marital debt when dividing marital property. *Turner v. Davis-Turner*, 8th Dist. Cuyahoga No. 106002, 2018-Ohio-2194, ¶ 10, citing *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, ¶ 14 (8th Dist.). Marital debt includes any debt that is incurred during the marriage for the joint benefit of the parties or for a valid marital purpose. *Stratton v. Stratton*, 8th Dist. Cuyahoga No. 107798, 2019-Ohio-3279, ¶ 41, citing *Rossi v. Rossi*, 8th Dist. Cuyahoga Nos. 100133 and 100144, 2014-Ohio-1832, ¶ 62, citing *Cooper v. Cooper*, 12th Dist. Clermont No. CA2013-02-017, 2013-Ohio-4433, ¶ 18.

{¶ 104} In the instant matter, Kevin contends that the proceeds from the sale of the house in Columbus, Ohio, which the parties purchased in 2009, for the

benefit of their children, who were attending The Ohio State University, and sold in 2018, was not properly allocated. The trial court awarded the entire sale proceeds to Csilla.

{¶ 105} Instead, Kevin insists the allocation should have been (1) $18,000 as repayment for a loan from his late father for the down payment, (2) $8,000 to their eldest son, for his contribution to the purchase price, and reimbursement to each child for management of and maintenance of the property, and (3) the remainder to be divided equally.

{¶ 106} In declining to allocate the proceeds in accordance with Kevin's wishes, the trial court stated that

> [Kevin] testified that he received a loan from his late father to cover the down payment. However, he has not presented any documentation of that loan: no loan documentations, no promissory note, etc.
>
> * * *
>
> [Kevin] testified that at the time of purchase, their oldest son contributed $8,000, variously described as a "credit" or a "tax rebate." There is no documentation of this purported contribution in evidence.
>
> * * *
>
> Each of the parties' children in turn lived at the Columbus house rent-free while attending college. Plaintiff contends each should now be reimbursed for "managing" the property when it was rented to others, or for "sweat equity" contributed to the house. [Kevin] offers no legal authority for the proposition that this constitutes a "marital debt."

{¶ 107} Here, without any records to substantiate receipt of the loan from father or documents regarding the tax credit the eldest son received, the trial court was not obligated to pay the alleged debts from the marital estate. In addition, as it

relates to repaying the children for maintaining and managing the property they lived in rent free, while attending college, the trial court could have arguably concluded that the children have already benefited sufficiently.

{¶ 108} Finally, as it relates to dividing the remainder equally between Kevin and Csilla, we have concluded previously that the record demonstrates that the trial court's division of the marital property was fair, equitable, and in accordance with law. Thus, we find no abuse of discretion.

{¶ 109} Accordingly, we overrule Kevin's sole cross-assignment of error.

{¶ 110} Judgment is affirmed.

It is ordered that appellee/cross-appellant recover from appellant/cross-appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR