[Cite as *W.G. V. D.G.*, 2024-Ohio-1690.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

W.G.,                                                                :

     Plaintiff-Appellant,                        :
                                          No. 113108

                                :

       v.                                          :

D.G.,                                                                :

     Defendant-Appellee.                        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT: AFFIRMED**
**RELEASED AND JOURNALIZED:** May 2, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-21-384439

---

### *Appearances:*

Robert O. Donegan, Jr., *for appellant.*


MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Plaintiff-appellant, W.G., appeals the trial court's judgment entry of divorce because it used a de facto termination date of the marriage for the purpose of distributing marital property and because her ex-spouse, D.G., was awarded the federal tax exemption for the parties' children. Because we do not find the trial court

abused its discretion in using a de facto date of termination of the marriage, thus awarding D.G. his pension obtained after the de facto date of termination, or in awarding D.G. the federal tax exemptions, we affirm the judgment of the trial court.

## PROCEDURAL HISTORY AND RELEVANT FACTS

{¶ 2} W.G. and D.G. were married on February 23, 2004, and have two children from the marriage. In 2012, D.G. initiated an action for divorce. He later dismissed his complaint. At that time, a child support order was enacted. D.G. paid support to W.G. from March 23, 2012, through the trial date. On March 10, 2021, W.G. filed a complaint for divorce, which case was tried before a magistrate on December 5, 2022. After trial, the parties had an opportunity to file written arguments and, thereafter, the magistrate issued a recommended order that the parties should be granted a divorce on grounds of incompatibility and living separate and apart for more than one year.

{¶ 3} As to the issues raised by W.G. in the appeal, D.G. testified that he worked at Aramark, that he had a pension, and that the first contribution to the pension was December 4, 2015. He stated that although he wanted to reconcile the marriage after W.G. moved out "for the children's sake," the relationship between W.G. and him had "long been over" prior to the time he filed for divorce. He explained that he considered reconciliation for a week or so after W.G. left their home. He further testified that since they separated, he and W.G had separate bank accounts and he had a credit card. W.G. testified she had a hair salon since 2015. She further testified that for eight years she had lived in a different city than D.G.

She testified that she had no credit card debt.  As to reconciliation, W.G. testified that she had numerous discussions with D.G. about reconciliation and still held on to some hope the marriage could be reconciled because family mattered to her.

{¶ 4}  In the recommended order, the magistrate found that for the purposes of distribution of property, a de facto date of termination should be used for the marriage.  Within the recommended order, the magistrate explained the reasons for selecting a de facto date of termination as follows:

> DURATION OF THE MARRIAGE
> The undersigned finds that [D.G.'s] analysis of the *Dill* factors to be well taken.  The marital property and debts in this case should be divided starting on the date the parties were married (2-23-2004), until the date that Defendant caused a child support order to be entered against him by the [Child Support Enforcement Agency] (3-23-2012). *The undersigned finds that the evidence showed that by 3-23-2012 the parties had separated on unfriendly terms, were not living as husband and wife, and were not cohabiting or intimate.* The undersigned finds that Plaintiff's reliance upon Defendant's comments to the FES investigator that he wished to maintain a relationship with Plaintiff for the sake of facilitating joint parenting was misguided in light of the other *Dill* factors. *The undersigned finds the fact that Defendant obtained, and Plaintiff accepted child support, under the auspices of a formal order, to be highly indicative that both parties considered their marital relationship to be all but legally over.*

(Emphasis added.)  Having found that the marriage ended on March 23, 2012, the magistrate then determined that D.G.'s pension was not marital property subject to division because D.G obtained his interest in the pension from his employer, Aramark, after the de facto termination date of March 23, 2012.

{¶ 5}  In considering the issue of child support,  the magistrate found there was "insufficient income and expense information introduced at trial to justify

modifying the current administrative child support order that began on 3-23-2012."

In conjunction with this determination, the magistrate found that

> [D.G.] should be awarded the tax dependency exemptions for the minor children, because the amount of income [W.G.] reports from her hair salon would make the exemptions less valuable to her. Should Plaintiff's reported income increase this could be the subject of a motion to modify child support which could be entertained in the future.

{¶ 6} On March 8, 2023, W.G. filed objections to the magistrate's decision. On May 5, 2023, after the transcript of proceedings was filed, she supplemented her objections, which read:

> 1. The magistrate erred by misapplying the test laid out in *Dill* to the facts and determining the de facto date of marriage termination to be 3-23-2012. The general criteron [sic] for establishing the de facto date of marriage in the *Schweinfurth* case needs also to be considered if using the de facto marriage termination theory.
>
> 2. The magistrate erred in awarding the Aramark pension in entirety to the defendant as a result of the de facto marriage termination date being erroneously determined.
>
> 3. The magistrate erred in awarding the children's exemption solely to the defendant.

{¶ 7} The trial court overruled these objections. In overruling W.G.'s first objection, the trial court found that

> [i]t is undisputed that the parties separated on unfriendly terms. The record does not indicate the parties were intimate after their separation. The only factors that weigh against finding the de facto termination of marriage date is the testimony of the Parties that Plaintiff moved in and out of marital residence several times and may have had discussions of reconciliation for the children's sake after the initial divorce was dismissed. However, in light of many of the other factors being satisfied, this holds less weight. As the Magistrate indicated, the Defendant's willingness to obtain and pay child

support, and Plaintiff's willingness to receive it, is highly indicative of their intentions to remain separated. Therefore, upon review of the record, the Court finds that the Magistrate did not err when he found the *Dill* factors weigh in favor of the de facto dates of the marriage being from February 23, 2004 until March 23, 2012.

{¶ 8} The trial court also overruled W.G.'s second objection, finding that the Aramark pension was properly awarded to D.G. as his interest accrued after the de facto termination date. In overruling the third objection, the trial court found the magistrate did not err in determining D.G. would benefit more than W.G. from the tax exemptions where W.G. testified to a small amount of income and did not produce tax returns or other documentation of that income.

{¶ 9} W.G. appeals the judgment entry of divorce; D.G. did not appear or file a brief in this appeal.

## LAW AND ARGUMENT
### Assignments of Error

{¶ 10} W.G. raises three assignments of error, which mirror the objections filed before the trial court. They read:

> 1. The magistrate erred and abused its discretion by misapplying the test laid out in *Dill* to the facts and determining the de facto date of marriage termination to be 3-23-2012. The general criteron [sic] for establishing the de facto date of marriage in the *Schweinfurth* case needs also to be considered if using the de facto marriage termination theory.

> 2. The trial court erred in awarding the Aramark pension in entirety to the defendant as a result of the de facto marriage termination date being erroneously determined.

> 3. The trial court erred in awarding the children's tax dependency exemptions solely to the defendant.

**The trial court did not abuse its discretion by using a de facto date of termination for the marriage or awarding D.G. his pension**

{¶ 11} We address the first and second assignments of error concurrently as our resolution of the first assignment of error guides our resolution of the second. In this case, the trial court used a de facto termination date of the marriage. The date of termination of marriage is presumed to be the date of the final hearing in the divorce case. *O'Brien v. O Brien*, 8th Dist. Cuyahoga No. 89615, 2008-Ohio-1098, ¶ 40, citing *Berish v. Berish*, 69 Ohio St.2d 318, 321, 432 N.E.2d 183 (1982). But, "[i]f the trial court determines use of the final hearing date would be inequitable given the circumstances of the parties, the court may 'select dates that it considers equitable in determining marital property.'" *Id.*, quoting R.C. 3105.171(A)(2)(b).

{¶ 12} In selecting a de facto termination date, the trial court has broad discretion and that decision "should not be disturbed on appeal absent an abuse of that discretion." *Smith v. Smith*, 8th Dist. Cuyahoga Nos. 110214, 110245, and 110274, 2022-Ohio-299, ¶ 25, citing *Berish* at 321. Moreover, a trial court may use a de facto date of termination if the evidence "'clearly and bilaterally shows that it is appropriate based on the totality of the circumstances.'" *Bailey v. Bailey*, 8th Dist. Cuyahoga No. 98173, 2012-Ohio-5073, ¶ 13, quoting *Boggs v. Boggs*, 5th Dist. Delaware No. 07CAF020014, 2008-Ohio-1411, ¶ 66.

{¶ 13} An abuse of discretion is one where the decision is arbitrary, unreasonable, or unconscionable. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). We have also stated that an abuse of discretion

occurs when "'a discretionary act * * * reaches an end or purpose clearly against reason and evidence.'" *Bradley v. Bradley*, 8th Dist. Cuyahoga No. 109792, 2021-Ohio-2514, ¶ 34, quoting *Flemco, L.L.C. v. 12307 St. Clair, Ltd.*, 8th Dist. Cuyahoga No. 105956, 2018-Ohio-588, ¶ 15.

{¶ 14} Within the first assignment of error, W.G. argues the magistrate erred by using a de facto termination date of a marriage because the factors enumerated in the Third District Court of Appeals case, *Dill v. Dill*, 179 Ohio App.3d 14, 2008-Ohio-5310, 900 N.E.2d 654 (3d Dist.), weigh in her favor. She also argues that the trial court should have further considered the criterion listed in *Schweinfurth v. Meza*, 8th Dist. Cuyahoga No. 80506, 2002-Ohio-6316, before applying a de facto termination date.

{¶ 15} In *Dill*, the appellant argued the trial court erred by not applying a de facto date of termination of the marriage for the purpose of determining marital property. *Id.* at ¶ 6. The Third District Court of Appeals stated that

> [s]everal factors should guide a trial court when determining whether a de facto termination of marriage date is equitable, including, but not limited to whether: (1) the parties separated on less than friendly terms; (2) the parties believed the marriage ended prior to the hearing; (3) either party cohabited with another person during the separation; (4) the parties were intimately involved during the separation; (5) the parties lived as husband and wife during the separation; (6) the parties maintained separate residences; (7) the parties utilized separate bank accounts or were/were not financially intertwined (with the exception of temporary orders); (8) either party attempted to reconcile; (9) either party retained counsel; and (10) the parties attended social functions together or vacationed together.

*Id.* at ¶ 11.  In addition to noting that the list of factors is not all-inclusive, the *Dill* court stated that none of the factors are dispositive; "rather, the trial court must determine the relative equities on a case-by-case basis."  *Id.*  This court recently recognized that "*Dill* appears to be the foremost case in Ohio to set forth a nonexclusive list of factors to consider when analyzing de facto termination of marriage dates."  *Machen v. Miller*, 8th Dist. Cuyahoga Nos. 112453, 112454, and 112479, 2024-Ohio-1270, ¶ 48.  In *Schweinfurth,* the trial court used a de facto date of termination for the marriage, that being the date when wife filed a complaint for separation.  *Id.* at ¶ 6.  In affirming that date, this court noted "that once the complaint for divorce had been filed, there was no further talk of reconciliation nor commingling of marital funds or concerted financial activity."  *Id.* at ¶ 9.

{¶ 16} W.G. argues that the magistrate erred and the trial court abused its discretion by using March 23, 2012, as the de facto date of determination because the *Dill* factors weighed in her favor.  She further argues that the trial court should have given more weight to the parties filing of joint tax returns after the de facto date and the testimony regarding reconciliation, factors noted in *Schweinfurth.*

{¶ 17} In overruling objections to the magistrate's order, the trial court referenced the factors in *Dill,* 179 Ohio App.3d 14, 2008-Ohio-5310, 900 N.E.2d 654, in making its determination, finding that

> [i]t is undisputed that the parties separated on unfriendly terms.  The record does not indicate the parties were intimate after their separation.  The only [*Dill*] factors that weigh against finding the de facto termination of marriage date is the testimony of the Parties that Plaintiff moved in and out of marital residence several times and may

have had discussions of reconciliation for the children's sake after the initial divorce was dismissed. However, in light of many of the other factors being satisfied, this holds less weight. As the Magistrate indicated, the Defendant's willingness to obtain and pay child support, and Plaintiffs willingness to receive it, is highly indicative of their intentions to remain separated. Therefore, upon review of the record, the Court finds that the Magistrate did not err when he found the *Dill* factors weigh in favor of the de facto dates of the marriage being from February 23, 2004 until March 23, 2012.

{¶ 18} At the time of the final hearing in December 2022, W.G. and D.G. had lived apart for at least eight years according to W.G. and for over a decade according to D.G. They filed one joint tax return in 2017 and maintained separate bank accounts and neither testified they had taken on debt jointly.

{¶ 19} In determining that the magistrate properly used a de facto termination date in distributing property, the trial court gave great weight to the fact D.G. obtained an order for and continually paid child support, which support W.G. accepted. Further, the testimony indicated that outside of the child-support payments, the parties' maintained separate bank accounts and had their own credit accounts. As such, the parties did not intertwine their finances. Further, they did not seek to reconcile the marriage other than for "the sake of the children." Accordingly, where no one factor is conclusive in determining whether it is equitable to use a de facto date of termination, we cannot say that the trial court abused its discretion by adopting the magistrate's recommendation in applying a de facto date of termination in this case.

{¶ 20} Because we find the trial court did not abuse its discretion by using a de facto termination date, we also find the trial court did not abuse its discretion in

awarding D.G. the entirety of his pension where he obtained interest in that pension after the de facto termination date of the marriage adopted by the trial court.

{¶ 21} The first and second assignments of error are overruled.

### The trial court did not abuse its discretion by awarding the tax exemption for the children to D.G.

{¶ 22} W.G. argues the trial court should have awarded her the federal income tax deductions for the children. R.C. 3119.82 requires that whenever a court issues or reconsiders a child support order it is to designate which parent may claim the child for federal income tax purposes. If the parties do not agree to whom the deductions will be awarded, R.C. 3119.82 provides in relevant part that

> the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, * * * payments for child support are substantially current * * *. [T]he court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

We review the decision to designate a parent as the person able to claim the federal tax deductions for an abuse of discretion. *In re B.M.*, 8th Dist. Cuyahoga No. 111905, 2023-Ohio-1567, ¶ 9. "'While the trial court does not need to state a basis for allocating the exemption, the record does need to include financial data in relation to the above factors to support the trial court's decision.'" *Branden v. Branden*, 8th

Dist. Cuyahoga No. 91453, 2009-Ohio-866, ¶ 36, quoting, *Ankney v. Bonos*, 9th Dist. Summit No. 23178, 2006-Ohio-6009.

{¶ 23} W.G. argues that because she is the residential parent and could be eligible for the Earned Income Tax Credit, the Child Tax Credit, Additional Tax Credit, and status as Head of Household Filing, she would benefit more by having the ability to claim the children as dependents. In overruling W.G.'s objections to the recommended order, the trial court found that W.G. "testified, and her Financial Affidavit indicates that her hair salon business income is $2,706 annually with no other income. Further, Plaintiff did not submit any tax returns or other documentation to support her financial affidavit."

{¶ 24} The evidence before the trial court regarding W.G.'s income was not substantiated; she did not supplement her financial disclosure form or her testimony with tax returns or other documents. Thus, when considering the relative financial circumstances of the parties, eligibility of either parent for tax credits, or for the overall benefit to the children, the trial court could not determine the effect of awarding W.G. the federal income tax deductions with any certainty. As such, W.G.'s arguments as to any benefit she might gain from being awarded the deductions is speculative at best[1] and we cannot say the trial court's decision to

---

[1] In addition to being speculative, even without the ability to claim the children as dependents, W.G. may still be eligible for some of those benefits as a parent may be able to file as Head of Household or claim the Earned Income Credit regardless of using the tax deduction for the children pursuant to IRS Publication 501, Dependents, Standard

award D.G. the federal tax deductions was an abuse of discretion nor against the evidence within the record.

{¶ 25} The third assignment of error is overruled.

## CONCLUSION

{¶ 26} The trial court did not abuse its discretion by using a de facto date of termination where the parties' finances were not intertwined, they did not seek to reconcile the marriage other than for the sake of the children, they lived apart for years, and D.G. obtained an order for and continually paid child support for over a decade. Because the trial court did not abuse its discretion by using a de facto termination date, it did not abuse its discretion by awarding D.G. the entirety of his pension in which he obtained an interest after the de facto termination date of the marriage. Further, the trial court did not abuse its discretion in awarding D.G. the ability to claim the children as dependents where the trial court could not with certainty determine the effect of awarding W.G. the deductions.

{¶ 27} Judgment affirmed.

Appellant to pay costs.

The court finds there were reasonable grounds for this appeal.

---

Deduction, and Filing Information (2023) 8, 12-17 and IRS Publication 596, Earned Income Credit (EIC) 16-18 (2023).

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____

MICHELLE J. SHEEHAN, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
EMANEULLA D. GROVES, J., CONCUR