[Cite as *Cutter v. Cutter*, 2012-Ohio-358.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96375**

## HEDWIG C. CUTTER

PLAINTIFF-APPELLANT/
CROSS-APPELLEE

vs.

## ROBERT M. CUTTER

DEFENDANT-APPELLEE/
CROSS-APPELLANT

**JUDGMENT:**
**AFFIRMED IN PART, REVERSED**
**IN PART, AND REMANDED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-261799

**BEFORE:** Stewart, J., Blackmon, A.J., and Cooney, J.

**RELEASED AND JOURNALIZED:**   February 2, 2012

**ATTORNEYS FOR APPELLANT**

Joseph G. Stafford
Anne C. Fantelli
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, OH   44114


**ATTORNEYS FOR APPELLEE**

Carl A. Murway
Brian E. Ambrosia
Taft, Stettinius & Hollister, L.L.P.
3500 BP Building
200 Public Square
Cleveland, OH   44114

MELODY J. STEWART, J.:

**{¶ 1}**  Plaintiff/cross-appellee, Hedwig Cutter, and defendant/cross-appellant, Robert Cutter, were divorced in 1999 under the terms of a settlement agreement that the domestic relations division reduced to judgment.  The settlement agreement provided that Robert would pay Hedwig spousal support for seven years based on a formula that incorporated a base amount of support and incremental percentages of Robert's earned income in excess of certain predetermined amounts.  The parties agreed that the court would not have jurisdiction to modify the terms of spousal support unless Robert "retired" during the term of spousal support.

{¶ 2}    Hedwig sought modification of support on grounds that Robert had retired. A magistrate agreed that Robert had retired, but the court rejected that analysis, finding that Robert had merely switched jobs and continued to work full time.  Finding that it lacked jurisdiction, the court refused to modify spousal support.  It did determine that Robert was in arrears on past spousal support obligations and, in addition to ordering him to pay that amount, ordered him to pay Hedwig $5,000 in attorney fees.

{¶ 3}    Hedwig appeals, claiming that the court erred by finding that Robert had not retired and further erred by awarding her an amount of attorney fees that were considerably less than she requested; Robert cross-appeals, claiming that he should not have been required to pay any attorney fees at all and that the court erred when determining the support arrearage.

I

{¶ 4}    The settlement agreement that the court incorporated into the divorce decree provided that Robert would pay spousal support of $5,100 per month (inclusive of poundage), in bimonthly installments, through a period ending August 31, 2007.  The divorce decree states:  "This court shall not retain jurisdiction to modify the amount or duration of the foregoing base spousal support order."

{¶ 5}    In addition to the base amount of spousal support, the parties agreed that Robert would pay as additional spousal support 30 percent of the first $100,000 of "annual earned income" that Robert might earn above $225,000 per year; 25 percent of the second $100,000 of Robert's annual earned income in excess of $225,000 per year;

and 15 percent of Robert's annual earned income in excess of $425,000 per year. These payments were to be made within ten days of Robert receiving any additional earned income, with Robert's paychecks submitted to Hedwig as proof of his bonuses. The separation agreement also stated: "The percentage spousal support provided hereinabove shall not be modifiable by either party or by any court and/or support agency of competent jurisdiction unless and until Husband shall have voluntarily retired during the time period within which spousal support is otherwise agreed to be due and payable." The parties agreed that "any percentage spousal support shall also terminate on August 31, 2007, the date on which all spousal support shall terminate."

{¶ 6} On July 6, 2007, Hedwig filed a motion to modify spousal support and sought an accounting of sums owed to her. In response, Robert filed a motion asking the court to enter an order terminating spousal support. The issues were ordered to trial before a magistrate.

{¶ 7} The magistrate found the evidence showed that on February 3, 2006, Robert "retired" from his job at an accounting firm and immediately began working full time for another firm. He explained that he had been looking to make a job change, but feared that preexisting medical conditions (cancer) would be excluded from medical coverage under a new employer's health plan. Having met certain longevity requirements necessary to qualify for retiree medical coverage with his old employer, Robert chose to characterize his cessation of employment as a retirement so that he could qualify for

retiree medical benefits. Robert commenced his new job immediately and at no point was he not employed full time.

{¶ 8} The magistrate concluded that Robert had retired, thus giving the court jurisdiction to modify the percentage component of the spousal support award. She found, however, that modification of support could in no way extend beyond August 31, 2007, so she would only consider modification of support from July 6, 2007 (the date of the motion to modify spousal support) through August 31, 2007. The magistrate reviewed Hedwig's financial condition and found that she had mismanaged her $600,000 share of the marital assets and over $700,000 in spousal support. Hedwig's liabilities exceeded her assets; she had no current income and was waiting to collect social security benefits, leaving her functionally bankrupt. Robert, on the other hand, was earning a salary with his new employer that exceeded the base amount of his salary with his prior employer, although he was not receiving the substantial bonuses that he earlier enjoyed. The magistrate thus found that Hedwig's circumstances had changed and that she was entitled to a modification of spousal support granting her an additional $5,000 per month, but only for the period of July 6, 2007 through August 31, 2007, for a total of $9,150. The magistrate combined this modification with support arrears owing from Robert, and ordered a total payment of $12,579.01. Finally, the magistrate awarded Hedwig $20,000 in attorney fees for prosecuting her motion to modify.

{¶ 9} Both parties filed objections to the magistrate's decision. Hedwig argued that the magistrate erred by finding it only had jurisdiction to modify spousal support for

the period, that it miscalculated Robert's support arrears, and failed to award enough in attorney fees. Robert objected to the magistrate's finding that he "retired" for purposes of granting the court jurisdiction to modify the percentage aspect of spousal support, the calculation of his support arrears, and the award of attorney fees.

{¶ 10} The court sustained in part and denied in part objections from both parties. It found that the magistrate's decision contained a typographical error in the computation of support arrears and that the amount Robert owed was $13,092.98. As for modification of support, it found that Robert's "change of employment did not constitute retirement." It thus found it lacked jurisdiction to modify spousal support and overturned the magistrate's decision to do so. Finally, the court found that Hedwig was entitled to only $5,000 for attorney fees.

II

{¶ 11} Hedwig's first and second assignments of error collectively challenge the court's finding that Robert did not retire from his earlier employment in a manner that would vest the court with jurisdiction to modify spousal support.

{¶ 12} R.C. 3105.18(E) states that if there is an order for the periodic payment of spousal support, the court that enters the decree of divorce or dissolution of marriage "does not have jurisdiction to modify the amount or terms of the alimony or spousal support" unless the "the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support."

{¶ 13} The parties were divorced under the terms of separation agreement that the court adopted and incorporated into the decree. A separation agreement submitted in a dissolution of a marriage is a binding contract between the parties and the court "cannot unilaterally change the provisions of the agreement." *In re Adams*, 45 Ohio St.3d 219, 220, 543 N.E.2d 797 (1989). We interpret settlement agreements according to standard contract law, *Brown v. Brown*, 90 Ohio App.3d 781, 784, 630 N.E.2d 763 (11th Dist.1993), giving the terms of a contract their plain and ordinary meaning. *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, ¶ 15.

{¶ 14} The separation agreement provided that the base amount of spousal support was not subject to modification under any circumstances. The parties agreed that the percentage aspect of spousal support could be modified, but only in the event that "Husband shall have voluntarily retired during the time period within which spousal support is otherwise agreed to be due and payable."

{¶ 15} At dispute was the interpretation of the word "retire." In the employment context, a voluntary "retirement" means to conclude one's working or professional career. Giving this word its plain meaning, we find that the court correctly found that Robert did not retire in a manner that would grant the court jurisdiction to modify the percentage aspect of spousal support. The evidence showed that Robert had simply switched jobs — he did not conclude his working or professional career. While it was true that he characterized his departure from his former employer as a retirement, he did so for the sole purpose of qualifying for retiree health benefits. He offered substantial testimony to

show that he had various preexisting medical conditions that may not have been covered under a different health insurance plan. By characterizing his departure from the former employee as a "retirement," Robert was able to qualify for retiree health benefits with no cessation of insurance for those preexisting conditions. Robert's new job was not only full time employment, but he typically worked between 48 and 60 hours per week. This work schedule conclusively showed that he had not "concluded" his working career in a manner that could reasonably be said to have amounted to retirement as that word is commonly understood. The court obviously, and correctly in our view, concluded that Robert had retired in name only. Hedwig's arguments to the contrary ignore the clear meaning of the language used by the parties in their settlement agreement.

{¶ 16} If Robert did not "retire" from employment, it follows that the condition precedent stated in the separation agreement for vesting jurisdiction with the court to modify the percentage aspect of spousal support did not occur. The court correctly found that it lacked jurisdiction to modify spousal support in any manner. Our conclusion that the court lacked jurisdiction to modify spousal support makes it unnecessary for us to consider whether Hedwig's loss of capital through poor or mismanaged investments constituted a change of circumstances justifying a modification of spousal support.

III

{¶ 17} The third, fourth, and fifth assignments of error and the first cross-assignment of error are based on the court's determination of Robert's support arrears stemming from the percentage payments he was obligated to make on income in

excess of $225,000. Hedwig argues that the court's calculation was too low and that Robert owed more; Robert argues that it was too high and that he owed less.

{¶ 18} Hedwig's argument that the court failed to properly calculate Robert's income in excess of $225,000 is premised on her belief that the parties would use Robert's "gross" wages for the calculation. The parties did not, however, agree that they would use Robert's gross wages when determining the percentage of any income in excess of $225,000. Instead, the separation agreement used the term "earned income."

{¶ 19} R.C. 3105.18(C)(1)(a) instructs a court contemplating a spousal support order to consider "[t]he income of the parties, from all sources * * *." This is commonly known as "gross income." The parties mutually agreed through their settlement agreement to define Robert's income in a different way, choosing to calculate the percentage share based on Robert's "earned income." The parties did not define the term "earned income," so we use its ordinary meaning. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus. As applicable here, the Internal Revenue Service defines "earned income" as "wages, salaries, tips, and other employee compensation, but only if such amounts are includible in gross income for the taxable year[.]" 26 U.S.C. 32(c)(1)(F)(2)(a)(I). When deciding what constitutes "earned income," the courts have held that Box 5 of the Internal Revenue Service Form W-2 be used as the benchmark for determining income. *Marcus v. Marcus*, 175 Conn. 138, 394 A.2d 727 (1978); *Ott v. Ott*, 266 A.D.2d 842, 698 N.Y.S.2d 137 (N.Y.A.D.1999). Box 5 of the W-2 includes all wages, tips, and other compensation in

addition to employee contributions to 401k plans, even though these contributions are tax-deferred.

{¶ 20} Hedwig referred to an "earnings summary" prepared in conjunction with Robert's W-2s that listed "gross pay" including Robert's salary and certain non-taxable earnings. The Internal Revenue Service does not consider non-taxable earnings as part of Medicare wages for purposes of Box 5 of the Form W-2, so we presume the parties knew that Robert's additional payments would be based on percentages of his earned income. *Maher v. Cleveland Union Stockyards Co.*, 55 Ohio App. 412, 418, 9 N.E.2d 995 (8th Dist.1936). We therefore reject Hedwig's claims that the court erred by not using Robert's gross income for percentage support calculation.

{¶ 21} What remains for decision is whether the court erred in its calculations of Robert's support arrears. Our review of the evidence lists Robert's earned income as shown by the Medicare wages listed on his W-2 forms and the amount of percentage payments he owed:

| Tax Year | Earned Income | Amount Over $225,000 | Percentage Owed |
|----------|---------------|----------------------|-----------------|
| 1999 | $415,242 | $190,242 | $52,561 |
| 2000 | $330,478[1] | $105,478 | $31,370 |
| 2001 | $337,756[2] | $112,756 | $33,189 |
| 2002 | $327,366[3] | $102,366 | $30,592 |

[1]The magistrate incorrectly used a figure of $332,500.

[2]The magistrate incorrectly used a figure of $340,000.

[3]Robert argues that his earned income was $322,366. The $5,000 difference is due to an adoption subsidy given to him by his employer. Although adoption subsidies may be excludable from income, they are nonetheless benefits that are included as social security and Medicare wages in boxes 3 and 5 of the Form W-2. See Internal Revenue Service Publication 525, http://www.irs.gov/publications/p525/ar02.html.

| | | | |
|---|---|---|---|
| 2003 | $307,096[4] | $82,096 | $24,629 |
| 2004 | $273,600[5] | $48,600 | $14,580 |
| 2005 | $318,851[6] | $93,851 | $28,155 |
| 2006 | $303,023[7] | $78,023 | $23,407 |
| 2007[8] | $293,584 | $68,584 | $13,717 |

Total Percentage Owed: $252,200

{¶ 22} Robert agreed to pay $5,000 per month in base spousal support. The amount of base spousal support that he owed over the 102-month duration of the settlement agreement was $510,000. Documentation from the Cuyahoga Support Enforcement Agency showed that he paid $520,562, for an overpayment of $10,562. Neither party contests the amount of this overpayment.

{¶ 23} Using the correct figures for earned income, we find that Robert owed Hedwig a total of $252,200 in percentage payments for spousal support. The parties disputed the total amount of money that Robert paid yearly in spousal support: Hedwig used her tax returns for documentation; Robert provided his tax returns and other documentation. The magistrate decided what figure to use based on the quality of each party's supporting documentation. Because the magistrate made a credibility

---

[4]The magistrate incorrectly used a figure of $310,000.

[5]The magistrate incorrectly used a figure of $275,000

[6]The magistrate incorrectly used a figure of $303,189.97

[7]In 2006, Robert reported income from two employers as a result of his job change. One W-2 form lists Medicare wages of $57,116; the other W-2 list Medicare wages of $245,907. Added together, these total $303,023.

[8]The magistrate found that as of August 31, 2007, Robert had made $199,248, an amount that did not exceed $225,000 and would not entitle Hedwig to a bonus payment. In order to avoid depriving Hedwig of any share of bonus income, the magistrate decided to prorate Robert's total yearly salary of $293,584 for two-thirds of the year. This resulted in the following equation: ($293,584 - $225,000) x 30% x 8/12 = $13,717.

determination based on the supporting documentation, we defer to those findings of fact. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 24} The magistrate found that Robert paid a combined total of $750,773 in spousal support. Of that amount, $4,600 was attributable to two spousal support checks that were written before the effective start date of Robert's spousal support obligation, so the magistrate deducted that amount from the total amount paid, leaving a total amount paid of $746,173. Robert owed Hedwig the total sum of $762,200 ($510,000 + $252,200). He was thus in arrears in the amount of $16,027. We sustain the third, fourth, and fifth assignments of error and the first cross-assignment of error and remand with instructions for the court to issue judgment to Hedwig in the amount of $16,027.

IV

{¶ 25} The sixth assignment of error and the second cross-assignment of error complain that the court abused its discretion by ordering Robert to pay Hedwig attorney fees in the amount of $5,000. Hedwig argues that the amount is too low; Robert argues that the amount is too high.

{¶ 26} R.C. 3105.73(B) empowers the court to award "reasonable" attorney fees to either party in any post-decree motion that arises out of the dissolution of a marriage if the court finds that attorney fees are "equitable." When deciding whether to award attorney fees, the court may consider "the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." Because an award of attorney fees invokes the court's equitable powers, our

review is limited solely to determining whether the court abused its discretion. *Swanson v. Swanson*, 48 Ohio App.2d 85, 90, 355 N.E.2d 894 (1976).

{¶ 27} The magistrate originally awarded Hedwig the amount of $20,000 for her attorney fees. That award was premised on the successful nature of Hedwig's motion for an accounting of spousal support payments balanced against Hedwig's unsuccessful motion to extend spousal support beyond the deadline stated in the separation agreement.

{¶ 28} When ruling on objections to the magistrate's decision, the court overturned the magistrate's finding that Robert had "retired" in a manner that would vest the court with jurisdiction to modify spousal support. It thus vacated the magistrate's finding that Hedwig was entitled to any additional spousal support. The court did, however, find that the magistrate made a computational error in setting forth Robert's support arrearage — a finding that benefitted Hedwig.

{¶ 29} Our discussion of the assignments of error make it clear that Robert was in arrears with his support obligation, though not to the extent determined by the court. In all other respects, we have affirmed the court's judgment. On that basis, we have no reason for finding that the court abused its discretion in ordering Robert to pay $5,000 for Hedwig's attorney fees.

{¶ 30} We note that Hedwig's argument in support of a higher award of attorney fees is based on her claim that Robert "has substantial assets and income, which clearly justifies the award of attorney fees requested by Hedwig." *See* Appellant's Brief at 19. R.C. 3105.73(B) makes it clear that the court cannot consider the parties' assets when

deciding whether to award fees. For his part, Robert does nothing more than argue that his "modest" underpayment did not justify an award of fees to Hedwig. But proving that underpayment was a complicated task, requiring the production of many financial records and several days of trial testimony. The court acted reasonably by finding that Hedwig was entitled to some fees in this respect, though not in the amount that she originally sought.

{¶ 31} This cause is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

It is ordered that the parties bear their own costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas — Domestic Relations Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MELODY J. STEWART, JUDGE

PATRICIA ANN BLACKMON, A.J., and
COLLEEN CONWAY COONEY, J., CONCUR