[Cite as *State v. Alexander*, 2024-Ohio-1080.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-46 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-0365(C) |
| | : | |
| FREDDIE ALEXANDER | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 22, 2024

. . . . . . . . . . .

JEFFREY M. MCQUISTON, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Freddie Alexander appeals from his conviction and sentence for three counts of felonious assault following a guilty plea. For the following reasons, we will affirm the judgment of the trial court.

I. Facts and Course of Proceedings

{¶ 2} On April 26, 2022, a Clark County grand jury indicted Alexander on one count of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1); one count of discharging of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3); three counts of felonious assault in violation of R.C. 2903.11(A)(2); one count of improper handling of firearms in a motor vehicle in violation of R.C. 2923.16(B); and four counts of having weapons while under disability in violation of R.C. 2923.13(A).   The indictment also contained several firearm specifications.

{¶ 3} A trial was set for October 31, 2022.   Following a status conference, the trial was continued.   On February 3, 2023, Alexander entered into a plea agreement with the State.   Alexander agreed to plead guilty to three counts of felonious assault, which were second-degree felonies, and to testify truthfully against his co-defendants.   In return, the State agreed to drop the other counts in the indictment and all the firearm specifications. At the plea hearing, the trial court asked Alexander several questions to determine whether he was entering his guilty pleas knowingly, voluntarily, and intelligently. Alexander stated that he had not been threatened or pressured into pleading guilty.   Plea Tr. 7.   In his written plea of guilty, Alexander stated, in part: "I am satisfied with my attorney's advice and competence. * * *   No threats have been made to me. * * *   By pleading guilty I admit committing the offense and admit the facts set forth in the indictment."   Based on Alexander's pleas, the trial court found him guilty and scheduled a sentencing hearing.

{¶ 4} On September 1, 2023, the day of the sentencing hearing, Alexander filed a motion to withdraw his guilty pleas.   He provided the following reasons as to why the trial

court should grant his motion:

> Defendant plead [sic] guilty to three counts of Felonious Assault, felonies of the second degree, with an agreement to testify against his co-defendants. Defendant agreed reluctantly, as he had been threatened while in custody. He did end up giving information to law enforcement despite these threats. Once the plea has been entered, he has continued to feel pressured, and has continued to be under pressure. He has since learned of the sentence handed down to others more involved in the planning and executing of the actions in this case, and is concerned that his case has been treated the same as others who were more at fault in this matter than he was.

> The State is minimally prejudiced, as the case being reset for trial is no more than if the case had been continued for other, trial-related reasons. The request is being made before Defendant has been sentenced, and so it was timely and reasonable to request.

{¶ 5} At the sentencing hearing, the trial court first addressed Alexander's motion to withdraw his guilty pleas. Alexander's counsel explained that his client "felt like his case was not treated differently than the others" (the co-defendants who he thought were more cupable) and that there were "some extenuating circumstances." Sentencing Tr. 4. According to his counsel, Alexander was "concerned about the statements made by the other co-defendants in this case and he wishes to go to trial." *Id.* The trial court then gave Alexander an opportunity to explain the reasons for his motion. In response,

the following exchange occurred:

THE DEFENDANT: I ain't got my whole discovery packet or none of that, that's one thing. I ain't got my whole discovery, half of the discovery packet. So I don't even know all the facts of my case or none of that.

THE COURT: Is that the only reason why you want to withdraw your plea?

* * *

THE DEFENDANT: No. My lawyer, like, I don't think she's helping me fight, like, you forced me into it. You forced me into a plea deal. You told me some other stuff and it ain't right.

THE COURT: You're saying you pled guilty on February 3rd of this year and that you were forced into that?

THE DEFENDANT: Yes.

THE COURT: By whom?

THE DEFENDANT: My lawyer.

*Id.* at 4-5.

{¶ 6} Alexander's counsel then responded as follows to Alexander's claim that he was forced into the plea deal by his counsel:

MS. KING: Your Honor, not only did we send him copies of the documents with regard to this case, I met with him for a significant amount of time over at London Correctional where he was serving an unrelated sentence and I think I was over there twice talking with him going through videos talking about the case. We talked at some length and then we also met with the

Prosecutor and detectives at some length. We've discussed the case at length and while I did advise him that I thought the plea deal was in his best interest and thought it was the right decision to make, I did tell him, as I tell every client, that at the end of the day he's the one that had to make the decision.

*Id.* at 8.

**{¶ 7}** The State responded that Alexander's motion to withdraw his guilty pleas was the result of a change in heart after seeing what sentences his co-defendants had received. The State contended that the factors the trial court had to balance weighed in favor of overruling the motion. *Id.* at 9-12.

**{¶ 8}** The trial court noted that both the State and Alexander's counsel stated that Alexander had received all the discovery. The trial court then explained that it was overruling Alexander's motion to withdraw his guilty pleas for the following reasons: (1) Alexander's contention that he did not receive all the discovery was unpersuasive and should have been brought up before he entered his guilty pleas; (2) Alexander's statement that he was forced into making the guilty pleas by his counsel was not entitled to any weight given defense counsel's statement and Alexander's statement at the plea hearing that he had not been threatened or pressured into entering the guilty pleas; (3) any pressure or threats he received from co-defendants or others after he entered his guilty pleas were irrelevant; (4) Alexander's statements about being less culpable than his co-defendants were not statements of innocence and were more relevant to mitigation at sentencing rather than a reason to withdraw the guilty pleas; (5) Alexander's motion

appeared to simply be a change of heart; and (6) Alexander's motion, which was filed a few minutes before the sentencing hearing, was not made at a reasonable time. *Id.* at 13-15, citing *State v. Caballero*, 10th Dist. Franklin No. 15AP-1132, 2016-Ohio-5496.

{¶ 9} On September 5, 2023, the trial court issued a judgment entry of conviction sentencing Alexander to indefinite sentences of seven years to ten and one-half years in prison on two of the counts of felonious assault and eight years to twelve years in prison on the third count of felonious assault. The trial court ordered these sentences to be served consecutively, for an aggregate minimum term of 22 years and an aggregate maximum term of 26 years in prison. The trial court found that Alexander was entitled to 42 days of jail-time credit from July 21, 2023 to September 1, 2023. Alexander filed a timely notice of appeal.

II.     The Trial Court Did Not Err In Its Calculation of Jail-Time Credit

{¶ 10} Alexander's first assignment of error states:

The trial court committed prejudicial error in failing to give Appellant the correct credit to which he was entitled for his pretrial detention in violation of clearly established precedent.

{¶ 11} "Where, for whatever reason, a defendant remains in jail prior to his trial, he must be given credit on the sentence ultimately imposed for all periods of actual confinement on that charge." *State v. Russell*, 2d Dist. Montgomery No. 26503, 2015-Ohio-3373, ¶ 37, citing *State v. Coyle*, 2d Dist. Montgomery No. 23450, 2010-Ohio-2130, ¶ 5. R.C. 2929.19(B)(2)(g)(i) provides that, at the sentencing hearing, the trial court must

"[d]etermine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced[.]" Ohio Adm.Code 5120-2-04(B) likewise provides that the trial court is required to determine "the amount of time the offender served locally before being sentenced" and "must make a factual determination of the number of days credit to which the offender is entitled by law and include this information within the sentencing entry[.]" However, it is the duty of the Ohio Department of Rehabilitation and Correction ("ODRC"), not the trial court, to reduce the offender's sentence "by the number of days the offender was confined as a result of the offense, between the date of the sentencing entry and the date committed to the [ODRC] * * *." Ohio Adm.Code 5120-2-04(A). "[T]he trial court's obligation in calculating jail-time credit is limited to calculating the total number of days the defendant was confined prior to sentencing." *State v. Dearmond*, 2d Dist. Clark No. 2022-CA-17, 2022-Ohio-3252, ¶ 13.

{¶ 12} According to Alexander, he was arraigned on August 12, 2022, at which time bond was set at $100,000. Alexander did not post bond and remained in jail through September 5, 2023, the date on which the trial court issued its judgment entry. Therefore, Alexander argues he was entitled to 389 days of jail-time credit rather than the 42 days credited by the trial court. The State responds that Alexander began a prison sentence on July 15, 2022, in an unrelated case out of Montgomery County in which he was sentenced to twelve months and seven days. According to the State, the prison sentence on the previous conviction ended on July 21, 2023. Appellee's Brief, p. 4. The

State contends that the Ohio Supreme Court has held that a defendant cannot receive jail-time credit when he already is in prison serving time on a previous, unrelated criminal conviction. *Id.* at 4-5, citing *State v. Cupp*, 156 Ohio St.3d 207, 2018-Ohio-5211, 124 N.E.3d 811. Therefore, the State believes the trial court properly calculated jail-time credit. We agree.

{¶ 13} In *Cupp*, the defendant was indicted on felony counts of rape, kidnapping, endangering children, and gross sexual imposition. Cupp pled not guilty, and the trial court set a $400,000 bond. At the time he entered his not guilty pleas, Cupp was incarcerated in the county jail in connection with a probation violation arising from an unrelated domestic violence case. *Id.* at ¶ 6. Cupp ultimately pled guilty to attempted abduction and endangering children. Just over a year after he initially pleaded not guilty, Cupp was sentenced. At the sentencing hearing, Cupp's defense counsel urged the court to give him credit from the time his bond was revoked as a result of his guilty pleas, even though he had been incarcerated on the probation violation during the majority of that time. The State contended that instead, credit should be awarded from the day after the sentence for the probation violation ended. The trial court sentenced Cupp, agreed with the State, and awarded jail-time credit beginning at the completion of the sentence for the probation violation. Cupp appealed to the Eleventh District Court of Appeals, which examined the language of R.C. 2967.191 and determined that its plain terms entitled Cupp to credit for the entire time he was incarcerated after his bail was revoked, regardless of the fact that he had already been incarcerated for the probation violation. *Cupp* at ¶ 9.

{¶ 14} The Ohio Supreme Court disagreed with the appellate court, explaining that R.C. 2929.19(B)(2):

> obligates the trial court to determine "the number of days that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced." Cupp became confined on the felony offense for which he was sentenced *after his confinement on the probation violation terminated*, i.e., on July 30, 2016, and if he had posted bond, he could have been released at that time. Prior to that date, however, his confinement related to the probation violation arising from the domestic-violence-related conviction in the municipal court. Thus, the trial court calculated jail-time credit from July 30 and correctly awarded Cupp 58 days of jail-time credit.

(Emphasis sic.) *Cupp* at ¶ 23. In short, the Ohio Supreme Court held that "[a] defendant is not entitled to jail-time credit while held on bond if, at the same time, the defendant is serving a sentence on an unrelated case." *Id.* at syllabus.

{¶ 15} In the present case, Alexander was serving a sentence for a previous, unrelated crime from August 12, 2022 until July 21, 2023. As such, he was not entitled to any jail-time credit during this period. However, once his sentence had had been served in that case, he was entitled to jail-time credit for the days he remained in confinement until the day of sentencing in this case. As the trial court correctly found, this resulted in a jail-time credit of 42 days.

{¶ 16} The first assignment of error is overruled.

III.     The Trial Court Did Not Abuse Its Discretion By Denying Alexander's Motion to Withdraw His Guilty Plea

{¶ 17} Alexander's second assignment of error states:

The trial court erred in denying Appellant's Motion to Withdraw his Guilty Plea.

{¶ 18} We review decisions on motions to withdraw a guilty plea for an abuse of discretion. *State v. Greenlee*, 2d Dist. Montgomery Nos. 28467, 28468, 2020-Ohio-2957, ¶ 11. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 19} Crim.R. 32.1 governs withdrawals of guilty pleas and provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Based on the language of Crim.R. 32.1, differing analyses have developed based on whether a motion to withdraw a plea was made before or after sentencing.

{¶ 20} Generally, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). However, "a defendant does not have an absolute right to withdraw a plea prior to sentencing." *Id.* "Even under the more lenient pre-sentence standard, a defendant must show a 'reasonable and legitimate basis for the withdrawal of the plea.' " *State v. Williamson*, 2d Dist. Montgomery No. 21965, 2008-Ohio-4727, ¶ 13, quoting *Xie* at 527. "A change of heart is not enough," and a trial court's finding regarding a defendant's true motivation is entitled to deference. *Id.*

{¶ 21} If the motion to withdraw a guilty plea was made post-sentence, however, the defendant instead bears the higher burden of establishing a manifest injustice. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. A post-sentence motion to withdraw a guilty plea is allowable only in extraordinary cases. *State v. Kongkeo*, 8th Dist. Cuyahoga No. 96691, 2012-Ohio-358, ¶ 2, citing *Smith* at 264.

{¶ 22} Based on our review of the record, we conclude that Alexander's motion to withdraw his guilty pleas, although made almost seven months after his guilty pleas and on the morning of sentencing, was a pre-sentence motion. In evaluating whether a trial court abused its discretion in overruling a pre-sentence motion to withdraw a plea, we review the following nine factors: (1) whether the accused was represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made

within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state would be prejudiced by withdrawal of the plea. *State v. Miller*, 2d Dist. Montgomery No. 29039, 2021-Ohio-2606, ¶ 15. Consideration of these factors involves a balancing test, and no single factor is dispositive. *Id.* at ¶ 16, citing *State v. Massey*, 2d Dist. Champaign No. 2015-CA-1, 2015-Ohio-4711, ¶ 11.

**{¶ 23}** Alexander contends that the trial court erred in denying his motion to withdraw his guilty pleas, because pre-sentence motions to withdraw guilty pleas should be freely and liberally granted and the State would not have been prejudiced in any meaningful way if the motion had been granted. Appellant's Brief, p. 20. The State responds that the balancing test noted above weighs strongly in favor of affirming the trial court's decision. According to the State, (1) Alexander's trial counsel was not alleged to be incompetent in any way; (2) the Crim.R. 11 plea hearing was not challenged as inadequate; (3) there was a full hearing on Alexander's motion prior to sentencing; (4) the trial court gave full consideration to the motion; (5) the motion to withdraw the pleas was not filed in a reasonable time in that it was filed the morning of the sentencing hearing and many months after the guilty pleas were entered; (6) Alexander made no claim that he did not understand his rights or the nature of the case; (7) Alexander conceded that he was culpable in the crimes of which he was accused; and (8) the State would be prejudiced by the efforts needed to secure witness and victim attendance at trial as more

time had passed.   Appellee's Brief, p. 7-8.

{¶ 24} We conclude that, on balance, the factors weigh heavily in favor of affirming the trial court's decision to deny Alexander's motion to withdraw his guilty pleas.   The first factor involved whether Alexander was represented by highly competent counsel. "Generally, courts begin with a presumption that a defendant had the benefit of competent counsel."   (Citation omitted.)   *State v. Estep*, 4th Dist. Meigs No. 23CA1, 2024-Ohio-58, ¶ 22.   Alexander stated in the written plea waiver that he was satisfied with his attorney's advice and competence.   Further, Alexander did not raise an ineffective assistance of counsel claim.   *Id.*, citing *State v. Delaney*, 4th Dist. Jackson No. 19CA9, 2020-Ohio-7036.   Therefore, the first factor weighed in favor of the trial court's decision.

{¶ 25} The second, third, and fourth factors also supported the trial court's decision.   The trial court gave Alexander a full Crim.R. 11 hearing before entering the pleas and held a full hearing on the motion to withdraw the guilty plea.   The trial court also gave full and fair consideration to the motion and set forth the reasons for denying the motion.

{¶ 26} The timing of Alexander's motion also weighed in favor of the trial court's decision.   If Alexander entered his pleas only because he felt pressured, he was fully aware of this when he agreed to the negotiated plea, yet he waited almost seven months to file his motion to withdraw the pleas.   "Generally, a motion to withdraw a guilty plea made on the day of the sentencing hearing is not made at a reasonable time."   (Citations omitted.)   *Estep* at ¶ 30.   This was especially true in the present case, in which almost seven months had passed between the plea hearing and the sentencing hearing.

{¶ 27} The sixth factor addresses whether Alexander had sufficiently outlined specific reasons for his plea withdrawal request. Alexander explained in his motion that he pled guilty "reluctantly, as he had been threatened while in custody." He then explained that he had since "learned of the sentence handed down to others more involved in the planning and executing of the actions in this case, and is concerned that his case has been treated the same as others who were more at fault in this matter than he was." Given that Alexander gave specific reasons in his motion, this factor weighed in favor of granting his motion.

{¶ 28} The seventh and eighth factors weighed in favor of denying Alexander's motion. The trial court had asked Alexander at the plea hearing whether he understood the nature of the charges and possible penalties, and Alexander stated that he did. Further, there was no evidence or argument that Alexander was not guilty of or had a complete defense to the charge or charges.

{¶ 29} Finally, the last factor requires us to examine whether the withdrawal of Alexander's pleas would have prejudiced the State. We agree with the State that it would have suffered some prejudice if Alexander had been permitted to withdraw his pleas. As the State notes, it had had to issue subpoenas for the victims and other witnesses numerous times, and "[s]ecuring the presence of witnesses can be difficult if a case is fresh, and even more difficult still if the victims are fatigued by the continued appearances and the desire to put the trauma behind them." Appellee's Brief, p. 8. While this factor was not dispositive, it did weigh in favor of the trial court's decision to deny Alexander's motion to withdraw his pleas.

**{¶ 30}** The balancing of the nine factors weighed heavily in favor of denying Alexander's motion to withdraw his pleas. Even though pre-sentence motions to withdraw pleas are to be "freely and liberally granted," we cannot conclude on this record that the trial court abused its discretion by denying Alexander's motion.

**{¶ 31}** The second assignment of error is overruled.

IV.     Conclusion

**{¶ 32}** Having overruled both of Alexander's assignments of error, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.