[Cite as *State v. Ringer*, 2024-Ohio-4812.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30062 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 01665 |
| | : | |
| ARIC DEMAR RINGER | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 4, 2024

. . . . . . . . . . .

JAY A. ADAMS, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Aric Demar Ringer appeals from a judgment of the Montgomery County Common Pleas Court convicting him of attempted burglary and sentencing him to 36 months in prison after denying his motion to withdraw his guilty plea.

For the reasons that follow, we will affirm the judgment of the trial court.

I.      Testimony and Course of Proceedings

{¶ 2} On June 15, 2023, a Montgomery County grand jury indicted Ringer on one count of burglary, a second-degree felony in violation of R.C. 2911.12(A)(2), and two counts of theft of property, fifth-degree felonies in violation of R.C. 2913.02(A)(1). Attorney Charles Slicer was appointed as Ringer's counsel.

{¶ 3} On November 8, 2023, Ringer entered into a plea agreement with the State. Ringer agreed to plead guilty to one count of the lesser-included offense of attempted burglary, a third-degree felony in violation of R.C. 2911.12(A)(2) and R.C. 2923.02, in exchange for the State's dismissing the remaining counts of the indictment and standing silent at sentencing.   The trial court conducted a plea colloquy with Ringer in which the court informed him of his constitutional rights and the potential sentences he could receive.   The court also asked questions to confirm that Ringer was knowingly, intelligently, and voluntarily entering his guilty plea.   Ringer signed the written plea waiver form.   The trial court found him guilty of attempted burglary, ordered a presentence investigation ("PSI") report, and set the matter for a sentencing hearing.

{¶ 4} The sentencing hearing was scheduled for December 13, 2023.   On that date, the trial court informed Slicer that it was inclined to impose a prison sentence after reviewing Ringer's unfavorable PSI.   Slicer requested a continuance of the sentencing hearing, which the trial court granted.

{¶ 5} On December 28, 2023, Slicer filed a motion to withdraw guilty plea on behalf

of Ringer. The motion stated, in pertinent part: "Defendant adamantly maintains his innocence and states the only reason he took said plea is he believed he was going to receive community control. Since that time, the Defendant has learned that he will not be receiving community control and will be sentenced to prison." The trial court set a hearing date for the motion and appointed Ringer new trial counsel, because Slicer likely would have to testify at the hearing on the motion.

{¶ 6} On February 8, 2024, a hearing was held on Ringer's motion to withdraw his guilty plea. Ringer testified first. Hearing Tr. 7-26, 40-41. Ringer stated that he was voluntarily waiving any right to confidentiality he had with regard to his communications with Slicer about the plea agreement with the State. He explained that Slicer had advised him to accept the State's offer of pleading to a fourth-degree-felony trespassing charge that would result in probation. Ringer at first told Slicer he did not want to accept that deal. He eventually changed his mind due to his financial struggles and decided to accept the plea deal. On the day of the plea hearing, Slicer explained to Ringer that the plea agreement involved a third-degree-felony attempted burglary charge rather than a fourth-degree-felony trespassing charge. He then told Ringer that, in order to receive probation, Ringer had to tell the probation department what he had done in the past. Ringer believed he was going to receive probation on the attempted burglary charge. Ringer testified that he would not have pleaded guilty if he had known that he was going to be sentenced to prison.

{¶ 7} On the day the sentencing hearing was originally scheduled, Slicer informed Ringer that the trial court planned to sentence him to prison. According to Ringer, Slicer

continued to tell him that "I'm going to see that you get probation." *Id.* at 12. Ringer also testified that Slicer told him that the trial court was willing to let him withdraw his plea.

{¶ 8} Ringer testified that he understood when he entered his plea that a third-degree felony carried a maximum sentence of 36 months in prison. He also understood at the time of the hearing on his motion to withdraw his plea that if the trial court granted his motion, he would face a second-degree burglary charge that could result in mandatory prison time of two to eight years.

{¶ 9} On cross-examination, Ringer explained what his understanding had been of the plea deal that his attorney presented to him:

> My understanding was I'll take the F4. This is how he came at me. This is my understanding. I'll take the F4 and get probation and get this thing threw out of there. That's exactly how it was said to me, "Take the F4, get probation, throw this thing away." So I said no from the jump. That was my - - I said no.
>
> Then I – my water got cut off at home, I reached back out for that - - for that deal so I could be able to move and get me a job and start back working and paying my bills around my house. So what's why I reached out to that. That was my understanding so I reached back out for that. I didn't want that at first.

Motion Hearing Tr. 16.

{¶ 10} Ringer testified that he had heard everything that was stated at the plea hearing, but Slicer led him to believe that he was going to receive probation rather than

prison time. He agreed that the trial court informed him at the plea hearing that there was no agreement on sentencing and that he could get either community control or 9 to 36 months in prison.

{¶ 11} Ringer spoke with his attorney at least two times before the plea hearing. They discussed the facts of the case, possibly getting a private investigator assigned to the case, and potentially getting Ringer a fourth-degree-felony deal and "we'll just throw this thing away" and get probation. *Id.* at 22. Ringer stated that Slicer never told him he *might* get probation; he told him that he *would* get probation. When the plea deal changed to a third-degree felony, Ringer still pleaded guilty because Slicer had told him that he still would receive probation. The primary reason Ringer moved to withdraw his guilty plea was the fact that he was going to receive a prison sentence rather than community control.

{¶ 12} Slicer testified next at the hearing. Motion Hearing Tr. 29-40. Slicer had been a practicing attorney for 32 years and focused on criminal law. He had been appointed to represent Ringer in this case, which involved a second-degree-felony burglary charge and two fifth-degree-felony theft charges. He had reviewed discovery and did not see many defenses to raise or any motions to file. In his opinion, the strength of the State's case was the witnesses. He reviewed the discovery packet with Ringer. Slicer advised Ringer that a plea deal was his best option. Slicer gave this advice based on the evidence and Ringer's extensive criminal history. He explained to Ringer that pleading to a reduced charge would create the possibility of receiving community control rather than prison time. Due to his criminal history, prison time would have been

mandatory if Ringer had been convicted of a second-degree felony. Slicer testified that Ringer seemed to understand everything they discussed and did not seem to have any competency issues.

{¶ 13} Slicer stated that Ringer "maintained his innocence throughout this case and I know he wanted to go to trial on it." *Id.* at 33. Slicer did not recall whether there had been discussions about a fourth-degree-felony trespassing charge. But he agreed that the plea agreement that Ringer had entered involved a third-degree-felony attempted burglary charge with no agreement on sentencing. Slicer testified as follows regarding what he told Ringer the morning of the plea hearing:

Q      Was that explained to Mr. Ringer?

A      I explained it in the hallway to Mr. Ringer, and since the State offered a felony three, I told him that my experience would be that he would probably be eligible for probation, and he was hesitant still to take the plea then. But I reiterated that that was the only way that he was going to be able to get community control or probation, and so he did follow through with the plea.

Q      Was there any promise for community control?

A      I never promise any defendant community control or guarantee anybody anything.

Q      Was there any threats made to get him to take this plea in order to resolve the case?

A      The only thing I told Mr. Ringer was that if he didn't accept the felony

three, that the offer was going to be taken off the table and it would be set for trial on the F2.

Q   Did you also explain to him that although there was an eligibility for community control, a F3 came with it nine to 36 months?

A   I did tell him that ultimately it was up to the Court to decide that.   But I did tell him my - - my experience would be since the State wasn't pushing for prison it was a potential community control case that he would likely get probation.

*Id.* at 34-35.   Slicer also told Ringer that he needed to cooperate with the PSI officer and accept responsibility.   He advised Ringer that "the courts generally like to see people remorseful . . . ."   *Id.* at 35.

{¶ 14} Slicer was informed on the day of the sentencing hearing that the trial court was inclined to impose prison time due to the fact that "the PSI did not come back well for Mr. Ringer."   *Id.* at 36.   Slicer informed Ringer of this and requested a continuance of the sentencing hearing.   Ringer was upset, and Slicer filed a motion to withdraw the guilty plea on his behalf.   One of the two reasons the motion cited for withdrawing the guilty plea was that Ringer had consistently maintained his innocence.

{¶ 15} On cross-examination, Slicer testified as follows regarding whether Ringer understood what "probation eligible" meant:

Q   And - - and the term you used when you're describing the possibilities on a plea offer to him you used, I believe it was a term, it was "probation eligible."   Does that sound right?

A       Correct.

Q       All right.   And is it - - it is possible that Mr. Ringer misunderstood your term "probation eligible," that he was going to receive probation?

A       I could tell you that after we came in here on the December date to get sentenced that he told me that his understanding was that he was going to receive probation.   So when I mentioned probation eligible, it's quite possible that he misunderstood that.   Yes.

*Id.* at 38-39.

{¶ 16} Following the hearing, the trial court denied Ringer's motion to withdraw his guilty plea.   The trial court sentenced Ringer to 36 months in prison and ordered him to pay $685 in restitution to the victim.   Ringer filed a timely notice of appeal.

II.       The Trial Court Did Not Abuse Its Discretion by Denying Ringer's Motion to Withdraw His Guilty Plea

{¶ 17} Ringer's first assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING THE PRE-SENTENCE MOTION TO WITHDRAW PLEA.

{¶ 18} We review decisions on motions to withdraw a guilty plea for an abuse of discretion.   *State v. Greenlee*, 2020-Ohio-2957, ¶ 11 (2d Dist.).   " 'Abuse of discretion' has been defined as an attitude that is "unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985).   "It is

to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 19} Crim.R. 32.1 governs withdrawals of guilty pleas and provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Based on the language of Crim.R. 32.1, differing tests have developed based on whether the motion to withdraw a plea is made before or after sentencing.

{¶ 20} Generally, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). However, "a defendant does not have an absolute right to withdraw a plea prior to sentencing." *Id.* "Even under the more lenient standard, a defendant must show a 'reasonable and legitimate basis for the withdrawal of the plea.' " *State v. Williamson*, 2008-Ohio-4727, ¶ 13 (2d Dist.), quoting *Xie* at 527. "A change of heart is not enough," and a trial court's finding regarding a defendant's true motivation is entitled to deference. *Id.*

{¶ 21} If the motion to withdraw a guilty plea was made after sentencing, however, the defendant instead bears the higher burden of establishing a manifest injustice. *State v. Harris*, 2002-Ohio-2278, ¶ 7 (2d Dist.), citing *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. A postsentence motion to withdraw a guilty plea is allowable only in extraordinary cases. *State v. Kongkeo*, 2012-Ohio-358, ¶ 2 (8th Dist.),

citing *Smith* at 264.

{¶ 22} When a defendant discovers before sentencing the particular sentence a trial court intends to impose, we have held that a presentence motion to vacate a plea ordinarily should be treated as a motion made after sentencing. This is so because a defendant cannot test the sentencing waters and then move to vacate his plea just before sentencing if he receives an unpleasant surprise. *State v. Wallen*, 2007-Ohio-2129, ¶ 22 (2d Dist.).

{¶ 23} Ringer filed his motion to withdraw his plea before he was sentenced. However, he had discovered after his plea hearing but before he was sentenced that he would be receiving a prison sentence rather than community control. The trial court construed Ringer's motion as a presentence motion to withdraw his guilty plea. The State contends that the trial court should have treated the motion as a postsentence motion, because Ringer found out before sentencing that he was going to receive a prison sentence rather than community control, which led to his change of heart. The State did not raise this argument before the trial court. Regardless, we do not need to decide whether Ringer's motion should have been considered under the stricter postsentence standard, because the trial court did not abuse its discretion in finding that his motion failed even under the more liberal presentence standard.

{¶ 24} In evaluating whether a trial court has abused its discretion in overruling a presentence motion to withdraw a plea, we review the following nine factors: 1) whether the accused is represented by highly competent counsel; 2) whether the accused was given a full Crim.R. 11 hearing before entering the plea; 3) whether a full hearing was

held on the motion; 4) whether the trial court gave full and fair consideration to the motion; 5) whether the motion was made within a reasonable time; 6) whether the motion sets out specific reasons for the withdrawal; 7) whether the accused understood the nature of the charges and possible penalties; 8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges; and 9) whether the State is prejudiced by withdrawal of the plea.  *State v. Miller*, 2021-Ohio-2606, ¶ 15 (2d Dist.).  "Consideration of these factors involves a balancing test and no single factor is dispositive."  *Id.* at ¶ 16, citing *State v. Massey*, 2015-Ohio-4711, ¶ 11 (2d Dist.).

{¶ 25} In this case, a consideration of these factors leads us to conclude that the trial court did not abuse its discretion when it denied Ringer's motion to withdraw his guilty plea.  First, Ringer was represented by highly competent counsel.  Although Ringer argues in his second assignment of error that his trial counsel did not provide adequate representation in this case, his attorney testified that he had evaluated the evidence and the merits of the case and gave Ringer his honest opinion that it would be a difficult case to win at trial.  Slicer believed the better approach would be to attempt to enter into a plea deal for a lesser-included offense, which would eliminate the mandatory prison time triggered by a second-degree felony conviction.  Further, the record supported a finding that Ringer's counsel was an experienced criminal defense attorney.

{¶ 26} Second, Ringer was given a full Crim.R. 11 hearing before entering his guilty plea.  As Ringer points out, the trial court did need to circle back during the plea hearing to make sure that Ringer understood the constitutional rights that he was giving up by pleading guilty.  Once it did so, the trial court asked Ringer again if he was still

pleading guilty, and Ringer stated that he was. During the Crim.R. 11 plea hearing, Ringer agreed that he was entering into his guilty plea of his own free will, that no one had threatened or forced him into the guilty plea, and no one had made promises that caused him to enter his guilty plea. Further, Ringer was informed during the plea hearing of the potential prison sentences he might receive as a result of his plea agreement and stated that he understood this. Ringer also signed a written plea form that contained this information.

{¶ 27} Third, Ringer received a full hearing on his motion to withdraw his guilty plea. Ringer testified at the hearing and his new trial counsel had the opportunity to introduce evidence and cross-examine Slicer.

{¶ 28} Fourth, the trial court gave full and fair consideration to the motion. The trial court came to the motion hearing prepared and laid out the procedural posture of the case. After hearing the evidence presented at the hearing, the trial court credited Slicer's testimony that he had not made a guarantee to Ringer that the trial court would impose community control rather than a prison sentence.

{¶ 29} Fifth, we must consider whether the motion to withdraw the guilty plea was made within a reasonable time. The guilty plea was entered on November 8, 2023. Ringer filed his motion on December 28, 2023, over 7 weeks after he entered his guilty plea and 15 days after the date on which his sentencing hearing had originally been scheduled. " 'Generally, a motion to withdraw a guilty plea made on the day of the sentencing hearing is not made at a reasonable time.' " *State v. Alexander*, 2024-Ohio-1080, ¶ 26 (2d Dist.), quoting *State v. Estep*, 2024-Ohio-58, ¶ 30 (4th Dist.). The two

reasons Ringer submitted in support of his motion to withdraw his guilty plea were that (1) he was innocent, and (2) he found out that he was going to be sentenced to prison. Ringer was aware of his alleged innocence at the time he entered his plea and nevertheless proceeded to enter a guilty plea with that knowledge. Ringer was also well aware of the possibility that he could be sentenced to prison at the time he entered his plea. Yet Ringer waited 7 weeks to file his motion to withdraw his guilty plea. The timing of his motion to withdraw his guilty plea appears to have been more a product of his ultimate realization that he was going to be sent to prison than it was a sudden realization that he was innocent or had discovered new evidence to support an actual defense to any of the charges in the indictment. *See State v. Caballero*, 2016-Ohio-5496, ¶ 6 (10th Dist.), citing *State v. Hassink*, 2000 WL 1741727 (7th Dist. Nov. 20, 2000). Further, the fact that he waited 7 weeks after entering his guilty plea to file his motion "indicates that his decision to plead guilty apparently was not hastily made and was one not easily abandoned." *Hassink* at * 5. Under the specific facts of this case, we conclude that his motion was not made within a reasonable time.

{¶ 30} The sixth factor weighed in Ringer's favor. The motion to withdraw his guilty plea set forth specific reasons for the motion. According to the motion, Ringer maintained his innocence and pleaded guilty solely because "he believed he was going to receive community control," and when he found out he was going to be imprisoned, he wanted to withdraw his plea. We conclude Ringer did provide specific reasons for seeking withdrawal of his plea, and, even if his specific reasons ultimately lacked merit, the sixth factor weighed in favor of Ringer's motion.

{¶ 31} The seventh factor looks at whether Ringer understood the nature of the charges and possible penalties. The record is clear that Ringer acknowledged at the plea hearing and in his written waiver form that he understood the nature of the charges and the potential penalties. The trial court orally explained all of this to him at the plea hearing. Further, Ringer stated at the hearing on his motion to withdraw his plea that he understood the maximum sentence he could receive. This factor supported the trial court's decision to deny Ringer's motion to withdraw his plea.

{¶ 32} The eighth factor concerns whether Ringer was perhaps not guilty of or had a complete defense to the charge or charges. While it appears undisputed that Ringer maintained his innocence throughout the time Slicer represented him, there was no evidence in the record that Ringer was perhaps not guilty of or had a complete defense to the three counts of the indictment. Slicer noted at the hearing on the motion to withdraw the guilty plea that the strength of the State's case was the witnesses and that he had not developed a defense to the charges, let alone a complete defense.

{¶ 33} The ninth factor relates to whether the State would be prejudiced by withdrawal of the plea. There is not much evidence in the record relating to this factor. The State is almost always prejudiced to some degree if a motion to withdraw a guilty plea is granted. For example, the State will have to go through the expense of contacting and subpoenaing witnesses again. Further, the State will have to deal with any prejudice that results from the failing memories of its witnesses as more time passes before trial. But, as Ringer points out, he was indicted less than a year before the filing of this appeal. Therefore, concerns about the unavailability of witnesses and evidence were lessened.

We conclude this factor weighed slightly in favor of denying Ringer's motion.

{¶ 34} Based on our review of the record and our weighing of the aforementioned nine factors, we conclude that the trial court did not abuse its discretion in denying Ringer's motion to withdraw his guilty plea. The record clearly demonstrates that Ringer understood at the time of his plea that he could receive a prison sentence, and no one forced him to enter the guilty plea. Further, the trial court credited the testimony of Slicer over Ringer relating to whether Slicer had made a guarantee to Ringer that he would receive community control rather than prison time if he pleaded guilty. We defer to the trial court on questions of credibility, because the fact finder "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). According to Slicer, he explained to Ringer that he believed that the trial court likely would impose community control, but he did not guarantee this would happen.

{¶ 35} Slicer also testified that the reason he suggested pleading to the third-degree-felony charge was because Ringer did not have a strong defense, and entering into the plea agreement would remove mandatory prison time from the trial court's equation. Ringer explained that he was feeling pressure to enter into the plea because of his financial difficulties at home. Slicer did not create this financial pressure and there was no evidence that Slicer or anyone else used this financial pressure to coerce Ringer into entering into the plea agreement.

{¶ 36} In sum, it appears that Ringer simply had a change of heart after he was

informed by his counsel immediately before the sentencing hearing that he was going to receive a prison sentence rather than community control. While his reaction was more than understandable, it was insufficient to establish that the trial court abused its discretion by denying his motion to withdraw his guilty plea.

**{¶ 37}** The first assignment of error is overruled.

III.     Ringer Has Failed to Establish Ineffective Assistance of Trial Counsel

**{¶ 38}** Ringer's second assignment of error states:

THE TRIAL COURT ERRED AND APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

**{¶ 39}** To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test is applied to guilty pleas. After showing that his counsel's performance was deficient, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

**{¶ 40}** "When considering whether trial counsel's representation amounts to deficient performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Walters*,

2014-Ohio-4966, ¶ 23 (4th Dist.), quoting *Strickland* at 689. " 'A properly licensed attorney is presumed to execute his duties in an ethical and competent manner.' " *Id.*, quoting *State v. Taylor*, 2008-Ohio-482, ¶ 10 (4th Dist.). "Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment." *Id.*, citing *State v. Gondor*, 2006-Ohio-6679, and *State v. Hamblin*, 37 Ohio St.3d 153 (1988).

**{¶ 41}** Ringer argues that his trial counsel failed to adequately communicate with him about his case, failed to adequately ensure that he understood the maximum penalties he faced, and failed to adequately explore all possible defenses. Appellant's Reply Brief, p. 6. Further, Ringer contends that his trial counsel led him "to believe that he would receive probation as long as he accepted the plea agreement." *Id.* According to Ringer, he would not have entered a plea but for his trial counsel's errors in assuring him that he would receive probation if he entered a guilty plea. *Id.* at 7-8.

**{¶ 42}** The State responds that an attorney's advice to accept a plea deal is not ineffective assistance of counsel. According to the State, "[i]t was entirely Ringer's choice whether to accept the plea offer. Acting upon Slicer's legal advice, Ringer easily could have decided to deny the plea offer and go to trial, forcing the State to carry its burden in proving the case." Appellee's Brief, p. 9. Further, the State points out that Slicer's advice to take the offer to the reduced third-degree-felony charge shielded Ringer from mandatory prison time, and Ringer stated on the record that no one had promised him anything to enter his guilty plea.

{¶ 43} "Entry of a voluntary guilty plea waives ineffective assistance of counsel claims except to the extent that counsel's performance causes the waiver of Defendant's trial rights and the entry of his plea to be less than knowing and voluntary." *State v. Kidd*, 2004-Ohio-6784, ¶ 16 (2d Dist.), citing *State v. Carson*, 2004-Ohio-5809 (2d Dist.). Ringer does not appear to be arguing that his trial counsel's ineffective assistance caused his plea to be less than knowing and voluntary. At his plea hearing, Ringer agreed that he had had an opportunity to speak with his trial counsel about the elements of the attempted burglary charge, any defenses he might have to it, and any legal motions that he could file in his case. He also stated that he was satisfied with his legal representation. *See State v. Zendarski-Metcalf*, 2024-Ohio-780, ¶ 17 (11th Dist.) (concluding that statements made by defendant that he was satisfied with his counsel and had time to speak with counsel helped to establish that his plea was not the result of ineffective assistance of counsel). Further, at the hearing on his motion to withdraw his guilty plea, Ringer testified that he had been aware at the time he entered his plea that he could receive a maximum of 36 months in prison.

{¶ 44} Ringer fails to identify what defenses he had to the three counts in the indictment or what substantive actions Slicer should have taken in Ringer's defense prior to encouraging him to enter a guilty plea. He also does not specify how failure to take such actions impacted the voluntary nature of his plea. *Id.* at ¶ 19. Ringer received a significant benefit from his decision to plead guilty. In return for his guilty plea to a lesser-included offense, the State dismissed a second-degree felony count and two fifth-degree felony counts. A conviction for burglary, a second-degree felony, would have subjected

him to the potential for a mandatory and much longer prison sentence than the 36 months he ultimately received. *Id.* at ¶ 18.

{¶ 45} Ringer's ineffective assistance of counsel claim relies primarily on the argument that his trial counsel promised or guaranteed him that he would receive community control rather than a prison sentence and that was the sole reason Ringer even considered pleading guilty. But the trial court made it clear at the beginning of the plea hearing that there had been no agreement on sentencing, and Ringer stated that he understood this fact. The written plea form also made it clear that the trial court had the option of imposing prison time rather than community control. Moreover, the trial court found Slicer credible when he testified that he did not promise or guarantee that Ringer would receive community control rather than a prison sentence. We defer to the trial court on this credibility determination. *Seasons Coal Co.*, 10 Ohio St.3d at 80.

{¶ 46} We cannot conclude on this record that Ringer received ineffective assistance of trial counsel. The second assignment of error is overruled.


IV.    Conclusion

{¶ 47} Having overruled both assignments of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . . .


EPLEY, P.J. and HUFFMAN, J., concur.